# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| DUALBOOT PARTNERS LLC, | ) | Civil Action No. _____ |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | **COMPLAINT** |
|  | ) |  |
| MOSSA HOLDINGS LLC, WAYNE LUDLUM, and ANNA PERELMAN, | ) ) ) | |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

## COMPLAINT

Plaintiff Dualboot Partners LLC ("Dualboot"), brings this action against Defendants Mossa Holdings, LLC ("Mossa"), Wayne Ludlum ("Ludlum"), and Anna Perelman ("Perelman") (collectively, "Defendants"), and alleges that:

## PARTIES

1.     Dualboot is a North Carolina limited liability company with a principal place of business in Wake County, North Carolina.  Dualboot's members are citizens of Florida and North Carolina for diversity purposes.

2.     Mossa is a Texas limited liability company with a principal place of business in Orange County, California.  Mossa does business in this State.  Based on reasonable inquiry and information and belief, Mossa has no members who are citizens of Florida or North Carolina for diversity purposes.

3.     Upon information and belief, Ludlum is a resident of Orange County, California, and is the Chief Operating Officer of Mossa.

4.     Upon information and belief, Perelman is a resident of Orange County, California, and is a managing member of Mossa.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), which provides for original jurisdiction of all civil actions in this Court between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Complete diversity of citizenship exists between Dualboot and Defendants pursuant to 28 U.S.C. § 1332(a).

6.     This Court has personal jurisdiction over Defendants consistent with the principles underlying the U.S. Constitution and N.C. Gen. Stat. § 1-75.4.  Defendants engage in substantial activity in North Carolina, including the activity giving rise to this action.

7.     Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred here, and Defendants are subject to personal jurisdiction in this district.

## FACTS

8.     Dualboot specializes in identifying, designing, developing, and deploying computer applications that allow technology to be used and activity to be performed by end users. For instance, Dualboot assisted Mossa with designing a golf-related application intended to track golf player's statistics.

9.     On or about August 30, 2022, Dualboot and Mossa entered into a written "Master Services Agreement" (the "MSA"), with an accompanying "Statement of Work" (the "SOW," and together with the MSA, the "Agreement").  A true copy of the Agreement is attached hereto as Exhibit A.

10. Ludlum, in his role as Chief Operating Officer for Mossa, signed the Agreement on behalf of Mossa.

11. Pursuant to the Agreement, Mossa promised to pay Dualboot, on a time-and-material basis, to identify, design, develop, and deploy Mossa's golf application, with payment to be made within 15 days from Mossa's receipt of monthly invoices from Dualboot.

12. The SOW included a non-binding estimate that the work to be performed by Dualboot would be completed in phases, with each phase estimated as shown below:

| Term | Estimated Cost |
|------|----------------|
| Phase 1: MVP / Static-Recommendation Golf App | ~$150,000 - $175,000 |
| Phase 2: Social Functionality | ~$50,000 - $75,000 |
| Phase 3: AI/ML Shot and Club Guidance | ~$75,000 - $125,000 |
| Phase 4: Marketplace | ~$40,000 - $80,000 |
| Ongoing Development / Future Enhancements | ~$30,000 - $60,000 per month (2.5 - 4.5 resources) |

13. Dualboot timely and properly performed the work and issued invoices to Mossa pursuant to the Agreement.

14. Mossa paid all invoices through November 2022. After November 2022, Mossa's payments under Dualboot's invoices were increasingly delayed.

15. For instance, Dualboot's September 2022 invoice of $10,222.59 was due October 21, 2022, and was paid by Mossa on October 27, 2022.

16. Dualboot's October 2022 invoice of $28,255.33 was due November 22, 2022, and was paid by Mossa on January 5, 2023.

17. Dualboot's November 2022 invoice of $75,666.67 was due December 24, 2022, and was paid by Mossa on April 5, 2023.

3

18.     Dualboot issued invoices for work properly and timely performed from December 2022 through May 2023 (the "Outstanding Invoices").  The Outstanding Invoices are:

| Invoice Date | Date Range of Work Performed | Hours Billed | Amount Billed |
|---|---|---|---|
| January 6, 2023 | December 2022 | 1,326 | $100,606.25 |
| February 7, 2023 | January 2023 | 1,462 | $110,937.50 |
| March 8, 2023 | February 2023 | 1,285 | $97,537.50 |
| April 10, 2023 | March 2023 | 1,414 | $107,050.00 |
| May 4, 2023 | April 2023 | 1,170 | $81,437.50 |
| June 8, 2023 | May 2023 | 269 | $5,550.00 |

19.     To date, Mossa has not paid the Outstanding Invoices.

20.     The total principal amount invoiced by Dualboot and unpaid by Mossa is $503,118.75.

21.     Section 7 of the MSA states that Mossa "will be deemed to have accepted the Deliverables included in a Statement of Work upon productive use of any portion of such Deliverables or after the period of ten (10) days immediately following an invoice for which Client has not delivered to the Company a written notice of errors related to the Deliverables."

22.     Mossa did not, and has not, provided any notice of errors for any invoice provided by Dualboot.

23.     Dualboot sent regular reminders for the Outstanding Invoices to Mossa and in March 2023, began contacting Mossa more specifically regarding payment on Mossa's account.

24.     On March 13, 2023, Mossa promised to pay the Outstanding Invoices under a payment plan, to be paid in full at the end of May (the "First Payment Plan"), in an email to Daniel

DelaCruz, Chief Financial Officer of Dualboot ("DelaCruz"). A true copy of the March 13, 2023, email exchange is attached hereto as Exhibit B.

25.     In response to this commitment, Mossa and Dualboot had a telephone conference on April 17, 2023. During this conference, Perelman assured DelaCruz that Mossa had sufficient funds to meet the obligations of the payment plan. Delacruz outlined this confirmation in his email dated April 17, 2023, and Perelman replied to this email April 19, 2023, promising the existence of sufficient funds. (See Exhibit B).

26.     On April 5, 2023, Mossa paid a payment of $75,666.67 against the November 2022 invoice.

27.     Dualboot relied upon Mossa's agreement to pay the remaining payments in the First Payment Plan in continuing to provide services in April and May.

28.     Mossa made no additional payments under the First Payment Plan.

29.     In early May 2023, Dualboot informed Mossa during a phone call that it would stop work and remove the team assigned to its project due to non-payment. After the phone call, on May 8, 2023, Ludlum sent Dualboot a message via "slack" reiterating a "temporary pause while we work through some issues with our bank." A true copy of this slack message is attached hereto as Exhibit C.

30.     Upon information and belief, in response to the communication by Dualboot, Ludlum, Perelman, and Mossa remitted a number of fabricated documents and false statements to Dualboot to substantiate Mossa's alleged ability to pay.

31.     On May 1, 2023 through May 3, 2023, via text, Ludlum assured DelaCruz that payment was forthcoming that day and sent an attachment purporting to be proof of funds, but

which could not be opened by DelaCruz, who then requested it by email. A true copy of this May 1, 2023, text exchange is attached hereto as Exhibit D.

32.    In response to Ludlum's text, DelaCruz again asked for proof of funds for Mossa and, on May 3, 2023, Ludlum texted a statement to Sean Heath ("Heath"), Product Director for Dualboot, from Chase bank detailing a $500,000.00 deposit made on April 21, 2023, to the Mossa Platinum Business Checking account ending in 7616. Upon information and belief, this bank statement was forged and false and known to be so by Ludlum. A true copy of this bank statement is attached hereto as Exhibit E.

33.    Also on May 3, 2023, during a phone conversation between Ludlum and Heath, Ludlum told Heath that the deposit was being held by Chase Bank because it is "out of state, a large sum, and from a bank they had not done business with." Ludlum also stated that the deposit would clear on Friday, May 5, 2023. Upon information and belief, this statement was false and known to be so by Ludlum.

34.    Later, on May 3, 2023, Ludlum verbally promised Allen Williams, a Product Director with Dualboot ("Williams"), that a same-day wire would be sent on Friday, May 5, 2023. Ludlum additionally stated that Mossa "had more money coming in at the end of the month." Upon information and belief, these statements were false and known to be so by Ludlum.

35.    When no wire was received, DelaCruz reached out to Ludlum on May 5, 2023. On May 8, 2023, Ludlum responded: "Unfortunately, it's a big mess because First Republic was involved. And now they are telling me it will take more time to clear these funds." Upon information and belief, this statement was false and known to be so by Ludlum. A true copy of the May 8, 2023, text exchange is attached hereto as Exhibit F.

36.     On May 29, 2023, in response to DelaCruz's requests for an update, Ludlum responded "Wire was pending for us on Friday."  Upon information and belief, this statement was false and known to be so by Ludlum.  A true copy of the May 29, 2023, text exchange is attached hereto as Exhibit G.

37.     Upon further requests for updates by DelaCruz, on June 19, 2023, Ludlum texted specific details regarding the wire, stating, "[s]ince the issuing bank would not confirm funds had cleared they extended the hold to 14 days – which makes funds available on 6/22.  We will then be able to pay DB.  There will be no more delays and we can then get back up and running."  Upon information and belief, this statement was false and known to be so by Ludlum.  A true copy of the June 19, 2023, text exchange is attached hereto as Exhibit H.

38.     On Saturday, June 24, 2023, at DelaCruz's request, Ludlum sent a PDF of a website screenshot purporting to show a Mossa Holdings LLC bank balance of $357,217.32.  Upon information and belief, this document was forged and false and known to be so by Ludlum.  A true copy of the document is attached hereto as Exhibit I.

39.     On July 7, 2023, during a phone conversation with DelaCruz, Ludlum stated that Mossa had received $600,000 in funds and again promised payment in full of Mossa's outstanding balance.  Upon information and belief, this statement was false and known to be false by Ludlum.

40.     On or before July 18, 2023, Dualboot calculated the balance due on Mossa's account of $503,118.75 and submitted the same in writing by providing invoices to Mossa (the "Demand Letter").  A true copy of the Demand Letter is attached hereto as Exhibit J.

41.     On July 10, 2023, Ludlum, on behalf of Mossa, confirmed the outstanding balance owed to Dualboot and provided dates and amounts of three payments to be made to satisfy the

outstanding balance (the "Second Payment Plan"). A true copy of the July 10, 2023, email is attached hereto as Exhibit K.

42. Ludlum's July 10, 2023, email also requested that Dualboot provide additional services based upon the promise to pay. (See Exhibit K).

43. Upon information and belief, Ludlum's July 7, 2023, statement regarding funds and the payment schedule provided in Ludlum's July 10, 2023, email was provided solely in an attempt to induce the Dualboot team to provide additional services without payment.

44. Mossa failed to make the July 10, 2023, payment as promised, or any other payments.

45. On July 11, 2023, as evidence of payment, Ludlum emailed DelaCruz and Heath what amounted to, upon information and belief, a PDF wire confirmation from Chase Bank detailing a $150,000 wire from Mossa to Dualboot. Upon information and belief, this document was forged and false and known to be so by Ludlum. A true copy of the wire confirmation provided is attached hereto and incorporated herein as Exhibit L.

46. No wire was received by Dualboot.

47. When DelaCruz inquired with Ludlum why Dualboot hadn't received the payment, Ludlum responded in an email to DelaCruz, dated July 14, 2023, stating, "Wire was not sent until 7/12 since the initiation was after the cut off time on 7/11. The[y] said you will see the monies on your side on Monday which will be three business days from 7/12." Upon information and belief, this statement was false and known to be false by Ludlum. (See Exhibit K).

48. To date, Dualboot has not received any additional payments from Mossa. Mossa continues to owe no less than $503,118.75, plus interest, to Dualboot.

49.     Mossa's nonpayment of Dualboot's invoices, while accepting the work, was a material breach of the Agreement.

50.     Section 5 of the Agreement provides, "All invoices shall be payable net fifteen (15) days from receipt by Client. Late payments shall accrue interest at a rate of the lesser of one and one-half percent (1.5%) per month or the highest rate allowed by law.  If Company employs any legal process to recover any amount due and payable from Client hereunder, Client shall pay all costs of collection and reasonable attorneys' fees and costs."

51.     The Outstanding Invoices are evidence of indebtedness under N.C. Gen. Stat. § 6-21.2, and Dualboot has given notice thereunder.  To the extent necessary, Dualboot provides additional notice that Mossa has five (5) business days from receipt of this Complaint to pay the entire balance without incurring attorneys' fees.  If payment is not received within five (5) days, Dualboot will be entitled to enforce its right to attorneys' fees.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (*as against Mossa*)

52.     The allegations of the above paragraphs are incorporated and re-alleged as set forth herein.

53.     The Agreement entered into between Mossa and Dualboot is a valid, binding contract.

54.     Dualboot performed under the Agreement and is not in violation of any provision of the Agreement.

55.     Mossa breached the Agreement by, among other things, failing to pay the Outstanding Invoices issued by Dualboot for the work it performed.

56.     Dualboot has suffered damages in the principal amount of $503,118.75, as a direct and proximate result of Mossa's breach of contract.

## SECOND CAUSE OF ACTION
## ACTION ON ACCOUNT STATED
### (*as against Mossa*)

57.     The allegations of the above paragraphs are incorporated and re-alleged as set forth herein.

58.     The Demand Letter (Exhibit J) contained a calculation of the balance then due and sought immediate payment.

59.     The Demand Letter was provided to Mossa and Mossa confirmed receipt in its response to the Demand Letter, as well as acknowledged the amount owed by Mossa to Dualboot through the Second Payment Plan.

60.     Mossa failed to meet its financial obligations under the Second Payment Plan.

## THIRD CAUSE OF ACTION
## FRAUD IN THE INDUCEMENT
### (*as against Mossa, Ludlum, and Perelman*)

61.     The allegations of the above paragraphs are incorporated and re-alleged as set forth herein.

62.     Upon information and belief, Ludlum falsely misrepresented that Mossa had the ability to, and would, pay for the services provided by Dualboot.

63.     Perelman falsely misrepresented in an email to DelaCruz on April 19, 2023, that Mossa had the ability to, and would, pay for the services provided by Dualboot.

64.     Upon information and belief, at the time of the statement, Mossa did not have the ability to pay for the services provided by Dualboot.  Defendants intended to defraud Dualboot.

65.     Ludlum led DelaCruz to believe the April 21, 2023, bank statement provided to Dualboot substantiated the claim of sufficient funds.  Upon information and belief, this bank

statement was fraudulent. Ludlum led DelaCruz to believe the bank statement was provided by Chase when, upon information and belief, such statement was not in fact provided by Chase.

66. Dualboot reasonably relied on Ludlum's statements on behalf of Mossa in continuing to provide services in the months of April and May, and in continuing to communicate with Mossa without seeking legal enforcement of the debt owed to Dualboot by Mossa. These statements include promises of payment, purported evidence of incoming deposits, purported initiated wire transfer payments to Dualboot, and affirmation that Mossa had adequate capital to pay the outstanding invoices.

67. On July 11, 2023, Ludlum provided a wire confirmation purporting to show a $150,000 completed wire from Mossa to Dualboot. Upon information and belief, this wire confirmation was fraudulent. Ludlum led DelaCruz to believe the completed wire confirmation was provided by Chase when, upon information and belief, such statement was not in fact provided by Chase.

68. Dualboot never received the purported July 11, 2023, wire transfer promised by Ludlum.

69. Upon information and belief, Ludlum never initiated the wire transfer on July 11, 2023, on behalf of Mossa to Dualboot.

70. Upon information and belief, Ludlum and Perelman, acting on behalf of Mossa, have committed fraud against Dualboot.

71. Dualboot was in fact deceived into relying on Ludlum's and Perelman's fraudulent statements.

72.     Dualboot has sustained damages in an amount to be proven at trial, but not less than the cost of services performed in reliance on Defendants' misrepresentations as a direct and proximate result of the fraudulent statements.

**FOURTH CAUSE OF ACTION**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
*(as against Mossa, Ludlum, and Perelman)*

73.     The allegations of the above paragraphs are incorporated and re-alleged as set forth herein.

74.     At all relevant times, Defendants' conduct as set forth herein was in and affecting commerce and constituted unfair and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq*.

75.     Specifically, Defendants intentionally induced Dualboot to continue to perform work on behalf of Mossa and intentionally misled Dualboot into believing that Defendants intended, and were able, to pay the outstanding amount due to Dualboot so as to prevent Dualboot from taking additional steps to recover the amount owed by Mossa.

76.     Defendants' actions were willful, knowing, and malicious, and were the direct and proximate cause of damage to Dualboot, including its inability to collect the amount owed to it under the Agreement.

77.     As a direct and proximate cause of Defendants' unfair and deceptive trade practices, Dualboot has suffered damages in an amount to be proven at trial, but not less than the cost of services performed in reliance on Defendants' misrepresentations, plus attorneys' fees and treble damages under N.C.G.S. §§ 75-16 and 75-16.1.

**PRAYER FOR RELIEF**

WHEREFORE, Dualboot prays and demands judgment against Defendants as follows:

1.      Enter a judgment against Defendants and order them, jointly and severally, to pay damages to Dualboot in an amount in excess of $75,000;

2.      Award treble damages pursuant to N.C. Gen. Stat. § 75-16;

3.      Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with this action, pursuant to N.C. Gen. Stat. § 6-21.2 and/or § 75-16.1, in addition to pre- and post-judgment interest at the statutory rate;

4.      A trial by jury; and

5.      Award Dualboot such other and further relief as the Court deems appropriate under the circumstances.

This, the 18th day of January, 2024.

*/s/ Alexandra S. Davidson*
Scott M. Tyler
N.C. State Bar No.: 23300
Alexandra S. Davidson
N.C. State Bar No.: 53436
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
Fax: (704) 331-1159
scotttyler@mvalaw.com
allidavidson@mvalaw.com

*Attorneys for Plaintiff Dualboot Partners LLC*

# EXHIBIT A



August 30, 2022

## Statement of Work

## MOSSA - Virtual Caddy App

This Statement of Work *("Statement of Work")* is pursuant to the terms and conditions of the Master Services Agreement dated August 30th, 2022 by and between Dualboot Partners, a North Carolina LLC with offices at 5540 Centerview Dr. Ste 204, #24754, Raleigh, North Carolina 27606-8012 (the "Company"), and MOSSA and 9203 Pelican Ave. Fountain Valley, CA 92708 ("Client"). This Statement of Work is made and entered as of August 30th, 2022 (the "Statement of Work Effective Date").

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

# Summary of Work

Company will provide consultation and services to the Client on a time and materials basis. Company and Client agree to share responsibility for keeping the project on schedule and on budget. Changes to this Statement of Work may increase the cost of this project and will be billed on a time and material basis.


Project Objective:

Company will work alongside Client to identify, design, develop, and deploy the Golf application in multiple phases. The goal will be to provide enticing, useful functionality to users of the Golf app, building engagement and growing excitement for future updates. The Dualboot model is to build small amounts of valuable functionality as quickly as possible, get it into the hands of users, and iterate on the project plan based on real-world feedback.

***While actual features and priorities will be dependent on agreement between Company and Client, and agreement on scope for each feature and phase, a proposed development plan could look similar to the following:***

## Phase 1: Voice-driven static golf functionality

The initial release will begin the process of collecting player/shot data, to build a data collection for use in future ML/AI-driven reporting. Absent that, the golf APIs will return standard club choice information based on a golfer's age and physical profile.

Features:
- Design clickable UI/UX prototypes for overall app layout and included Phase 1 features (~6-10 weeks)
- Gather required profile information about golfer (gender, age, handicap, etc) (~1-2 weeks)
- Configure infrastructure and hosting for APIs, database, and AWS-driven services (~3-5 weeks)
- Integrate with Siri and Google Assistant for initial voice commands (shot number, ball location, club choice, etc) to receive data, parse it at the API level, and return results (~6-8 weeks)
- Create rubric of standard club recommendations for a limited number of profile options (~1-2 weeks)
- Visualize course location via satellite map service integration and GeoJSON overlays (~4-8 weeks)
- API to provide club recommendations based on green distance and golfer profile, then collect actual results post-shot (~8-12 weeks)

## Phase 2: Social functionality

The subsequent release would focus on the social aspect of the app, while continuing to collect shot/play data for Phase 3. The social functionality would be designed to drive engagement through building a circle of golfing friends, sharing shot/club data, and comparing gameplay between different

1

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

users.

Features:
- Design clickable UI/UX prototypes for social features included in Phase 2 (~4-6 weeks)
- Allow connection of golfer profiles with others to form circles of interest, via invite or search (~4-6 weeks)
- Use shot data to create compelling, shareable scorecards post-match (~3-5 weeks)
- Allow for friends to comment on specific shots/holes/games (~2-4 weeks)
- General video content provided by golf experts to view (~2-4 weeks)

## Phase 3: Data-driven course advice

Using the data gathered on the courses from Phases 1 & 2, train ML algorithms to understand cohorts of golfers with a given profile, hole distance, and weather conditions, and recommend specific clubs/shots

Features:
- Design clickable UI/UX prototypes for display of club selection data in Phase 3 (~1-3 weeks)
- Given current ball location, distance, weather, and golfer profile, use AI/ML services such as Amazon Personalize and SageMaker to provide club recommendations (~12-18 weeks)
- Receive post-shot data via voice to compare predicted results with actual results (~1-2 weeks)
- Refine ML models with new data (ongoing)

## Phase 4: Marketplace

Provide a venue to buy and sell golf equipment, experiences, and premium content.

Features:
- Design clickable UI/UX prototypes for marketplace and premium content areas (~4-6 weeks)
- Allow users to list available equipment for sale, and to search for equipment to buy (~8-10 weeks)
- Leverage ecommerce engines (Stripe, etc) to handle payment from buyer to both seller and MOSSA, including potential escrow (example: Sideline Swap) (~4-8 weeks)
- Allow purchasing of premium video content (example: Prime Video) (~2-4 weeks)

## Future Phases

Possibilities for future phases include:
- Virtual tournaments
- Livestreams
- Golf history and trivia competitions
- Personalized virtual training sessions

*And much, much more*

# Delivery Methodology

| Deliverables | Description |
|---|---|
| Product Backlog | The Company will collaborate with Client to identify a prioritized backlog of epics, user stories and acceptance criteria that will serve as the basis for the design and development of the product. The Product Backlog will be maintained and managed by the Product Team. |
| Product Design | Utilizing the output of Product Backlog, the Company will collaborate with Client to design the product user experience (UX).<br><br>Leveraging the output of the UX design, the Company will design a graphical user interface (UI design) for the Product in collaboration with the Client.<br><br>Clickable prototypes based UX and UI designs will be delivered via Figma. |
| Product Development Sprints | The Company will develop the Product utilizing the Product Backlog and the Product Design. Development will be organized into sprints and managed by the Company. Sprints will include product management, design, engineering, QA and other Company resources as required. |
| Product Development Deployments | The Company will deploy the Product codebase to a cloud environment so that the Product is available to end users. End users may be internal testers or actual customers depending on the maturity of the Product and the operating plan of the Client. |
| Support | The Company will support the technical needs of the product. Support will not include a call center but will include a prioritized list of items identified and approved by Client's client team. |

# Team

Company's team is comprised of Product and engineering, as follows:

| Functional Area | Description | Cost |
|---|---|---|
| Product Director | Provides strategic direction and management for the Delivery team. This includes the role of CTO and Product Management. | $200/hr |
| Designers | Develops the brand, look and feel, user experience and visual graphics/design. Example roles include:<br><br>• User Experience Designer (UX)<br>• User Interface Designer (UI) | $75/hr |
| Developers | Responsible for coding, testing and implementing the Product. Example Developer roles include:<br><br>• Lead Developer<br>• Web Developer<br>• Front-End Developer<br>• HTML/CSS Developer<br>• Mobile Developer<br>• Test Developer | $75/hr |

# Estimated Term & Budget

**The term and cost estimates are estimates. Actual term and cost could vary depending on scope.** Company and client agree to work together over the term of the agreement to adjust scope to hit term and cost estimates or will work together to modify term and/or cost estimates to account for desired scope.

| Term | Estimated Cost |
|---|---|
| Phase 1: MVP / Static-Recommendation Golf App | ~$150,000 - $175,000 |
| Phase 2: Social Functionality | ~$50,000 - $75,000 |
| Phase 3: AI/ML Shot and Club Guidance | ~$75,000 - $125,000 |
| Phase 4: Marketplace | ~$40,000 - $80,000 |
| Ongoing Development / Future Enhancements | ~$30,000 - $60,000 per month (2.5 - 4.5 resources) |

# Risk Mitigation

At a minimum, the Company and Client will communicate engagement risks during weekly status meetings. The Company and Client will work together to minimize each engagement risk.

Deviations to the project plan often result in additional costs and frequently delay product launch.

# Deposit

Client agrees to pay a deposit of $15,000 prior to the Company starting the engagement. The deposit will be credited to the last months' invoice.

# Payments

Each month the Company will send an invoice for the previous month's work and any incidental

expenses. All invoices will include a time & materials break down.

## Terms & Conditions

In addition to the Master Services Agreement, this Statement of Work includes the following terms & conditions:

- No hosting or other operating expenses (e.g., computers, software, etc.) will be paid for by the Company. If the Company does pay for such expenses, the Client will reimburse the Company as part of the monthly invoicing process defined above.

- Both parties acknowledge all dates or estimates are targets; there are innumerable factors that can impact dates and estimates.

- Client may approve additional scope and/or budget in writing (email is acceptable)

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

# Statement of Work Signature

IN WITNESS WHEREOF, the parties have caused this Statement of Work to be executed as of the Statement of Work Effective Date by their duly authorized representatives.

**Company**

Signature

Daniel DelaCruz

Name

Principal

Title

09 / 03 / 2022

Date

**Client**

Wayne Ludlum

Signature

Wayne Ludlum

Name

COO

Title

09 / 02 / 2022

Date

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

# MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** ("Agreement") made effective this 30th day of August, 2022 (the "Effective Date") is by and between Dualboot Partners a North Carolina limited liability company (herein "Company"), and MOSSA at 9203 Pelican Ave. Fountain Valley, CA 92708 ("Client").

## RECITALS

The Company operates a business that builds software platforms and digital strategy services for a variety of clients in various industries;

The Client desires to hire Company and Company desires to accept and perform such services, on the terms and subject to the conditions set forth in this Agreement.

## AGREEMENT

NOW THEREFORE, for and in consideration of payment, mutual covenants, promises, representations, and releases herein contained, the receipt and sufficiency of which is hereby acknowledged, the Company and Client agree as follows:

1.      <u>Services</u>. Company agrees to perform services (the "Services") for Client as detailed in one or more project descriptions (each a "Statement of Work). Company shall, in its sole discretion, determine the method, details and means of performing the Services and providing any deliverables (the "Deliverables"), subject to the specifications set forth in the applicable Statement of Work. Each Statement of Work will expressly refer to this agreement. In an event of disagreement or conflict between any term of this Agreement , any Statement of Work or any change order, the terms of the Statement of Work shall control, followed by the terms of this Agreement and then any change order terms.

2.      <u>Relationship</u>. Company and Client expressly agree and acknowledge that the relationship created by this Agreement is one of Independent Contractor. Nothing in this Agreement shall be deemed or construed by the Parties or any third party as creating the relationship of principal and agent, partnership, or joint venture between the Parties. Unless otherwise stated in the applicable Statement of Work, Company shall have sole discretion over the identity of its personnel used to provide the Services, provided that Company shall ensure that the personnel are in Company's reasonable judgment suitably qualified and experienced to perform the applicable work.

3.      <u>Cooperation</u>. Each Statement of Work includes a proposed project schedule estimate, and Company and Client hereby agree to endeavor to provide resources to develop and deliver any deliverables set forth in the Statement of Work in accordance with the project schedule estimate. Client shall make available to Company a designated representative ("Client's Representative") shall be authorized to make binding decisions

1

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

for Client regarding the obligations which are the subject of this Agreement, and shall perform or have performed other duties and requirements of Client as set forth in this Agreement or in an applicable Statement of Work. Client understands that Company shall rely upon Client's Representative as having the authority to make binding decisions on behalf of the Client. Client shall provide Company with timely access to any Client assets, including Client's intellectual property, needed for Company to perform the Services (the "Client Materials"), and Client acknowledges and agrees that delays in cooperation by Client will likely result in delays to the project schedule and delivery dates and may impact budget. Client will be responsible for ensuring that all such Client Materials are accurate and complete. Company shall not be responsible for securing any necessary Intellectual Property Rights that may be owned or retained by third parties unless the applicable Statement of Work expressly makes Company responsible for securing those intellectual property rights in which case such obligation is subject to the availability of those resources on terms approved by Client. Unless otherwise agreed in writing by the parties, Client shall have sole responsibility for acquiring and maintaining its own technology environment, including but not limited to PC's, operating systems, databases, servers, Internet access, networks, and hosting.

4.   <u>Term and Termination</u>. The Term will begin on the Effective Date and will remain in force until terminated. Either party may terminate for convenience this Agreement or a statement of work, or reduce the then-current team size (as determined by the Company in good faith, under a statement of work) with forty-five (45) days' written notice to the other party; provided, however, for any termination for convenience by the Client, the Client shall pay to Company an amount in liquidated damages equal to the greater of (a) the billable amount of work performed by the Company during the forty-five (45) day period prior to the termination, and (b) the average monthly amount billed to the Client in the two full billing cycles prior to the delivery by Client of the notice of termination, multiplied by 1.5. The Client and Company warrant to each other and agree as follows:

1. that the Company expends and reserves valuable resources, including staff time, to dedicate to the Client during the period in which the Agreement is in effect and that the Company must plan, in advance, for the deployment of those resources, including through staffing levels;
2. that the Company cannot reasonably avoid these costs without advance notification;
3. that the damages to the Company, in the event of termination of the Agreement for convenience by Client, would be difficult to ascertain; and
4. that the amount agreed to pursuant to this section is a reasonable approximation of the Company's damages and not punitive in nature.

All Client termination or resource reduction notices will be emailed to daniel.delacruz@dualboot.com    The Company may immediately terminate this Agreement or a Statement of Work upon material breach by the Client. Material breach shall mean only (a) late payment by the Client; (b) Client is the subject of a voluntary petition in bankruptcy or any voluntary proceeding relating to insolvency, receivership, liquidation, or composition for the benefit of creditors; (c) the Client becomes the subject of an involuntary petition in bankruptcy or any involuntary proceeding relating to

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

insolvency, receivership, liquidation, or composition for the benefit of creditors, if such petition or proceeding is not dismissed within sixty (60) days of filing; (d) Client fails to cooperate with Company in the provision of the Services in a manner than substantially hinders the ability of Company to perform its obligations to Client; and (e) material breach of Client's obligation under this Agreement or any applicable Statement of Work. Upon receipt of a notice of termination, the parties shall cooperate to wind down all activities with respect to any incomplete Statements of Work in an orderly manner, as soon as practical, and based upon an agreed upon schedule. Upon termination of this Agreement or Statement of Work, Client shall be obligated to pay Company for all Services rendered pursuant to any Statements of Work through the completion of the wind-down process described in the preceding sentence, and Company shall then transfer Deliverables in the then-current state of completion to Client. Each party shall immediately cease all use of and shall return to the other party promptly all Confidential Information and materials of such other party and all copies, portions and abstracts thereof, that are in its possession or under its control or shall, at the disclosing party's direction, destroy the other party's Confidential Information (including all copies) and confirm its destruction to the disclosing party, other than any materials for which Client has paid and are transferable. For the avoidance of doubt, Company shall only deliver to Client such portion of any Deliverables that are complete upon first receiving payment of all fees due for such Services.

5. <u>Compensation</u>.
    a.    *Fees*. Client will pay Company fees and other compensation as applicable as provided in the applicable Statement of Work.
    b.    *Invoices and Payment*. Company shall provide invoices to Client every month. All invoices shall be payable net fifteen (15) days from receipt by Client. Late payments shall accrue interest at a rate of the lesser of one and one-half percent (1.5%) per month or the highest rate allowed by law. If Company employs any legal process to recover any amount due and payable from Client hereunder, Client shall pay all costs of collection and reasonable attorneys' fees and costs. Further, upon Client's failure to pay an invoice on time, the agreed upon schedule in the Statement of Work shall be voidable at Company's sole discretion, regardless of whether Company ceases or suspends performance. Also, Company shall have the option of changing the terms of the original schedule, and before work on any Deliverables recommences, Client shall bring its account current, and agree to the proposed new schedule.
    c.    *Expenses*. Client shall reimburse Company for expenses that have been pre-approved in writing. Company shall provide appropriate documentation (e.g., receipts or invoices) for reimbursable expenses.

6. <u>Taxes</u>. All expenses, fees and other payables to Company hereunder do not include any use, sales, value added or other applicable taxes, duties or tariffs, payment of which will be the sole responsibility of Client (excluding any taxes based on Company's net income). Client will immediately reimburse Company for any such amounts that Company pays on Client's behalf.

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

7.  Delivery and Acceptance. Company will deliver the Deliverables to Client in accordance with the details set forth in the applicable Statement of Work. Client will be deemed to have accepted the Deliverables included in a Statement of Work upon productive use of any portion of such Deliverables or after the period of ten (10) days immediately following an invoice for which Client has not delivered to the Company a written notice of errors related to the Deliverables.

8.  Confidentiality. During the course of performance of this Agreement, each party may disclose to the other certain confidential information. Each party shall hold the other party's Confidential Information in confidence and shall use its commercially reasonable efforts to protect it. Each party shall not disclose the other party's Confidential Information to any third party, and shall use it for the sole purpose of performing under this Agreement, except to those of its employees and subcontractors who have a bona fide need to know such Confidential Information for the performance or enforcement of this Agreement; provided that each such employee and subcontractor is bound by a written agreement that contains use and nondisclosure generally consistent with the terms set forth in this section. At the conclusion of each Statement of Work or upon any termination or expiration of this Agreement or any applicable Statement of Work, each party shall either return the other's Confidential Information in its possession (including all copies) or shall, at the disclosing party's direction, destroy the other party's Confidential Information (including all copies) and confirm its destruction to the disclosing party. "Confidential Information" means any written information provided or prepared by a party ("Disclosing Party") that is provided to, or obtained by the other party (including any director, officer, employee, agent, or representative) ("Receiving Party") including but not limited to, that which relates to research, product plans, products, services, clients, markets, software, developments, inventions, processes, designs, drawings, engineering, technical data, know-how, hardware configuration information, marketing or finances of the disclosing party. The term "Confidential Information" shall not include any information which: (a) is in the public domain at the time of disclosure or enters the public domain following disclosure through no fault of the Receiving Party, (b) the Receiving Party can demonstrate as already in its possession prior to disclosure hereunder or is subsequently disclosed to the Receiving Party with no obligation of confidentiality by a third party having the right to disclose it or (c) is independently developed by the Receiving Party without using the Disclosing Party's Confidential Information. Client acknowledges and agrees that:  (d) Company is in the business of building custom software platforms and providing digital strategy services for a variety of clients in various industries and that Company has obtained and will obtain under this Agreement and Statements of Work general knowledge, skill, and expertise in building such platforms and providing such services ("Know How"); and (e) subject to the provisions of this Agreement pertaining to Client's ownership of Client Materials and Deliverables, nothing in this Agreement shall be construed to prevent or in any way limit company from using such Know How in any current or subsequent endeavors and Client shall have no interest in such endeavors. The following obligations will not restrict either party from disclosing the other party's Confidential Information: (i) pursuant to the order

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

or requirement of an administrative agency, court, or other governmental body, provided that the party required to make such a disclosure gives reasonable notice to the other party to contest such order or requirement; (ii) to its financial advisors or legal; (iii) as required under applicable securities regulations; and (iv) subject to customary restrictions, to present or future providers of venture capital and/or potential private investors in or acquirers of such party.

9.    Ownership of Intellectual Property. The Company acknowledges and agrees that any Deliverables prepared by the Company under this Agreement shall be considered the exclusive property of the Client, conditioned upon full payment by the Client. The Company agrees that Client shall retain all title and rights to Company's work performed as part of the Services and any and all deliverables (including, without limitation patent rights, copyrights, trademarks, and other intellectual property rights) or other legal interest in all data, analyses, graphs, reports, formulae, know-how, patent rights, copyrights, trade secrets, physical property, or other material and intellectual property prepared, procured, or produced, in the rendition of the Services.

10.    Non-solicitation. During the term of this Agreement and for a period of thirty-six (36) months thereafter, Client shall not, directly or indirectly, employ, induce or attempt to induce any current or former employees or contractors of the Company to leave the employ of the Company, to work directly or indirectly for the Client or any entity affiliated with Client either through ownership or contract, or otherwise interfere with the relationship of any employees, independent contractors, suppliers or vendors of the Company. As used herein the word "employ" shall include, without limitation, the soliciting of a person who is an independent contractor of the Company including former employees or contractors of the Company. Client agrees that any actual or threatened breach of this Section 10 will result in irreparable harm to Company for which there is no adequate remedy at law. In the event of any such breach, Company shall be entitled to equitable relief, including injunctive relief, in addition to all other remedies available at law or in equity. In the event of a breach of any provision set forth in this Section, then the Client shall pay as liquidated damages but not as a penalty the greater of two (2) times each hired employee's annual salary or, in the case of a contractor, the projected annual payments to such contractor, or One Hundred Fifty Thousand Dollars ($150,000), in a lump sum payment within two (2) weeks of the date upon which the employee begins a new employment relationship. Client acknowledges that the damages caused by a breach under this Section shall be difficult to calculate and that the liquidated damages set forth herein are a commercially reasonable amount to compensate Company for the financial harm caused by a breach hereunder by Client.  Liquidated damages under this paragraph shall not limit or impair any other remedies that Company may seek for breach of this paragraph or this Agreement.

11.    Publicity. Except as provided herein, no press release, announcement, publication, or other use of the other party's insignia logos, trademarks, tradenames or service marks (collectively, the "Marks") shall be made by either party without the other party's prior approval. Notwithstanding the foregoing, and consistent with the terms of this

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

Agreement, including Section 8, Company may list Client as a Client of Company, including utilizing Client's Marks, in the Company marketing materials, such as representative client lists, website, case studies, printed and digital sales material. Company may also include a link to Client's web site on Company's web site. Client agrees to make reasonable efforts to include a credit to Company for performance of Services in related publicity materials and marketing activity.

12. <u>Good Faith & Non-Disparagement</u>. Parties agree they will generally work together in good faith and will not disparage or encourage others to disparage the other party. For purposes of this agreement, the term disparage includes without limitation comments or statements made in any matter or medium in the press and/or the media about the a party which would adversely affect any manner of the conduct of the business of the other party, without limitations to a party's business plans or prospects or the business reputation of a party.

13. <u>Indemnification</u>. Client agrees to defend, indemnify and hold harmless Company, its subsidiaries, affiliates and other related companies, and its and their principals, directors, officers, employees and agents from and against any and all liabilities, penalties, claims, fines, demands, suits and causes of action of any nature whatsoever, and any and all damages, costs and expenses sustained or incurred (including cost of defense, settlement and reasonable attorneys' fees) asserted by or on behalf of any person or entity relating to, arising out of or concerning a claim by a third party of infringement by Client Materials used in the Services. Subject to the terms of this Agreement including, without limitation, the terms of Section 14, Company agrees to defend, indemnify and hold harmless Client, its subsidiaries, affiliates and other related companies, and its and their principals, directors, officers, employees and agents from and against any and all liabilities, penalties, claims, fines, demands, suits and causes of action of any nature whatsoever, and any and all damages, costs and expenses sustained or incurred (including cost of defense, settlement and reasonable attorneys' fees) asserted by or on behalf of any person or entity relating to, arising out of or concerning a claim by a third party of infringement of such third party's intellectual property rights by any Deliverable, provided that such obligation by Company shall not apply if the infringement claim is based on the inclusion of any Client Materials or requirements in the Deliverable.

14. <u>Warranties and Disclaimers</u>.

   a. *Warranties*. Each party represents and warrants to the other party that (i) it is a legal entity in good standing, (ii) it is authorized to carry on its business and to perform the obligations set forth in this Agreement, (iii) it will perform its obligations under this Agreement in compliance with applicable law, (iv) this Agreement is valid, binding and enforceable against it (subject to applicable principles of equity and bankruptcy and insolvency laws), and (v) it has the power and full ability to grant the rights granted to the other party and their permitted assigns herein. Client warrants that it owns or has sufficient rights to use and to

6

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

authorize Company to use the Client Materials and the Client Materials do not infringe the intellectual property rights of any third party.

b.      *Warranty Disclaimer*. THE WARRANTIES SET FORTH IN SECTION 14(a) ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE MATERIALS PRODUCED UNDER THE TERMS OF THIS AGREEMENT ARE PROVIDED TO CLIENT "AS IS," THAT IS, WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED.

c.      *Damages Disclaimer*. THE PARTIES AGREE THAT NEITHER PARTY'S LIABILITY FOR DAMAGES FROM ANY CAUSE OF ACTION WHATSOEVER, REGARDLESS OF THE FORM OF ACTION, WILL EXCEED THE FEES PAID OR PAYABLE BY CLIENT PURSUANT TO AN APPLICABLE STATEMENT OF WORK UNDER THIS AGREEMENT FOR THE PREVIOUS THREE (3) MONTHS. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, SPECIAL OR SIMILAR TYPES OF DAMAGES OF ANY NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, DAMAGES ARISING FROM LOSS OF USE OF ANY SOFTWARE OR HARDWARE, COSTS OF PROCUREMENT OF SUBSTITUTE PRODUCTS OR SERVICES, LOST DATA, DATA BREACHES, LOST PROFITS OR REVENUE, OR FOR ANY CLAIM OR DEMAND BY ANY THIRD PARTY, ARISING OUT OF OR RELATED TO THE AGREEMENT OR THE PERFORMANCE OR BREACH THEREOF, EVEN IF ADVISED OF THIS POSSIBILITY.

15.      <u>Force Majeure</u>. Neither party shall be responsible for any failure to perform, or delay in performing any of its obligations under this Agreement, where and to the extent that such a failure or delay results from causes outside the control of such party. Such causes shall include, without limitation, delays caused by the other party, acts of God or of the public enemy, acts of the government in its sovereign or contractual capacity, fires, floods, epidemics, pandemics, quarantine restrictions, freight embargoes, strikes, riots, civil unrest, labor shortages or the like.

16.      <u>Assignment</u>. Company shall be entitled to assign this Agreement in connection with (a) a sale, assignment, transfer or other disposition of all or substantially all of the assets or equity interest of the Company; or (b) a reorganization, restructuring or the like.

17.      <u>Entire Agreement</u>. This Agreement, including all Statements of Work, constitutes the entire understanding between the parties, superseding all previous negotiations, understandings, and agreements. An amendment or modification to this Agreement shall be effective only if in writing and signed by all parties.

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

18.     Counterparts. This Agreement may be executed in one or more original, electronic or facsimile counterparts, each of which shall be deemed an original, and all of which together shall constitute one agreement. Execution of a facsimile or electronic copy shall have the same force and effect as execution of an original, and a facsimile or electronic signature shall be deemed an original and valid signature.

19.     Headings. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

20.     Severability. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party. Upon determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the maximum extent possible.

21.     Survival. The provisions of Sections 4 through 14 shall survive the expiration or termination of this Agreement. All other provisions of this Agreement, including any Statements of Work which by their terms or import are intended to survive such expiration or termination, shall survive.

22.     Waiver. Failure by a party to require performance of any provision(s) shall not affect that party's right to require subsequent performance at any time thereafter, nor shall a waiver of any breach or default of this Agreement constitute a waiver of any subsequent breach or default or a waiver of the provision itself.

23.     Notices. All notices, requests, demands, instructions, or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given upon delivery, if delivered personally, upon confirmed receipt if by e-mail, or upon delivery if sent using a national overnight delivery service, if addressed to the other party at the addresses as set forth on the signature page below. Either party hereto may change the address to which such communications are to be directed by giving written notice to the other party hereto of such change. Additionally, a copy of all notices from Client to Company shall be emailed to accounting @dualbootpartners.com.

24.     Governing Law and Venue. This Agreement will be governed by and interpreted according to the law of the State of North Carolina, excluding any laws of North Carolina that would apply the law of a different jurisdiction. Any dispute or claim arising out of, or concerning or related to this Agreement shall be subject to the exclusive jurisdiction and venue of the courts located in North Carolina and parties hereby consent to the personal and exclusive jurisdiction and venue of these courts over such claims.  In the event of any

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

dispute under this Agreement, the parties shall discuss the dispute within seven (7) days of receipt of written notice of the dispute by one party to the other. The parties agree to attempt to resolve such dispute in good faith for a period of thirty (30) days following such written notice. If after thirty (30) days, the parties are unable to resolve the dispute, either party shall be entitled to submit such dispute to a panel of three arbitrators, one selected by each party and the third arbitrator selected by mutually agreement of the first two arbitrators, in the City of Charlotte, North Carolina. The arbitration shall be conducted in accordance with the rules and procedures of the American Arbitration Association. The parties agree that such arbitrators' decision shall be final and binding and either party shall be entitled to enter it in any competent court with valid jurisdiction for purposes of enforcement only. The costs of the arbitration, including the reasonable fees and expenses of attorneys and arbitrators, shall be paid by the Party, or the Parties, as directed in the sole discretion of the arbitrator(s).

*Signature page follows.*

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized representatives as of the dates set forth below their respective signatures.

**Dualboot Partners LLC**

By: Daniel DelaCruz, Principal

Date: 09 / 03 / 2022

Address: 5540 Centerview Dr Ste 204, #24754

Raleigh, North Carolina 27606-8012

Phone: 904 728 0904

Email: daniel.delacruz@dualboot.com

**Client: MOSSA**

By: Wayne Ludlum

Date: 09 / 02 / 2022

Address: 9203 Pelican Ave.,
Fountain Valley, CA 92708

Phone: 3107046142

Email: wayne@mossa.cc

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

11

Doc ID: 92d05a9ec43936502249b43b3bd815cf89936b76

 **HELLOSIGN**

| | |
|---|---|
| **TITLE** | MOSSA and DBP MSA and SOW August 2022 |
| **FILE NAME** | MOSSA Dualboot SOW.pdf and 1 other |
| **DOCUMENT ID** | 92d05a9ec43936502249b43b3bd815cf89936b76 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

## Document History

**SENT**
**08 / 30 / 2022**
23:51:04 UTC

Sent for signature to Jeff Browning (j.browning@mossa.cc)
and Daniel DelaCruz (daniel.delacruz@dualbootpartners.com)
from daniel.delacruz@dualbootpartners.com
IP: 73.224.195.189

**VIEWED**
**08 / 31 / 2022**
14:25:16 UTC

Viewed by Jeff Browning (j.browning@mossa.cc)
IP: 99.48.49.125

**SIGNED**
**09 / 02 / 2022**
19:42:24 UTC

Signed by Jeff Browning (j.browning@mossa.cc)
IP: 209.160.251.178

**VIEWED**
**09 / 03 / 2022**
09:47:38 UTC

Viewed by Daniel DelaCruz
(daniel.delacruz@dualbootpartners.com)
IP: 73.224.195.189

**SIGNED**
**09 / 03 / 2022**
09:48:18 UTC

Signed by Daniel DelaCruz
(daniel.delacruz@dualbootpartners.com)
IP: 73.224.195.189

**COMPLETED**
**09 / 03 / 2022**
09:48:18 UTC

The document has been completed.

# EXHIBIT B



Daniel DelaCruz <daniel.delacruz@dualbootpartners.com>

## MOSSA <> DBP Invoice - February 2023
30 messages

---

**Kate Henson** <kate.henson@dualbootpartners.com>                    Wed, Mar 8, 2023 at 10:20 AM
To: Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Wayne Ludlum <wayne@mossa.cc>
Cc: Accounting <accounting@dualbootpartners.com>

Hi All,

Please see the attached invoice for work performed in February and let us know if you have any questions.

Thank you,
Kate



**Kate T. Henson**
Operations and Accounting Manager
kate.henson@dualbootpartners.com



dualbootpartners.com

---

2 attachments

 **MOSSA Excel Detail - February 2023.xlsx**
39K

 **MOSSA & DBP Invoice - February 2023.pdf**
692K

---

**Daniel Delacruz** <daniel.delacruz@dualbootpartners.com>                    Thu, Mar 9, 2023 at 1:22 PM
To: Kate Henson <kate.henson@dualbootpartners.com>
Cc: Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Wayne Ludlum <wayne@mossa.cc>, Accounting <accounting@dualbootpartners.com>,
Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>

Hi Guys — can you please provide an update on the open balance and payment timeline. We are floating a tremendous amount of work.

Thank you,
Daniel

On Mar 8, 2023, at 10:21 AM, Kate Henson <kate.henson@dualbootpartners.com> wrote:

[Quoted text hidden]

---

2 attachments

 **MOSSA Excel Detail - February 2023.xlsx**
39K

 **MOSSA & DBP Invoice - February 2023.pdf**
692K

---

**Wayne Ludlum** <wayne@mossa.cc>                    Thu, Mar 9, 2023 at 2:42 PM
To: Daniel Delacruz <daniel.delacruz@dualbootpartners.com>, Kate Henson <kate.henson@dualbootpartners.com>
Cc: Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill
<kellyanne.oneill@dualbootpartners.com>

Hi Daniel,

I appreciate your patience, you guys have been more than patient and great.  We are working on this today and will have a solid plan by tomorrow to share and start implementing.

Best - Wayne

Wayne Ludlum/CPO



310.704.6142



http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                                    Mon, Mar 13, 2023 at 10:14 AM
To: Wayne Ludlum <wayne@mossa.cc>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>

Hi Wayne,

Circling back on this thread. Can you please share the plan here?



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com

 

[Quoted text hidden]

---

**Wayne Ludlum** <wayne@mossa.cc>                                    Mon, Mar 13, 2023 at 10:37 AM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>

Hi Daniel,

I will have a plan to you this morning, I was waiting for a confirmation on Friday to respond back.

-Wayne

> On Mar 13, 2023, at 7:15 AM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:

> Hi Wayne,

> Circling back on this thread. Can you please share the plan here?



> **Daniel DelaCruz**
> Principal

> mobile: 904.728.0904

> www.dualboot.com
> daniel.delacruz@dualbootpartners.com

 

> On Thu, Mar 9, 2023 at 2:43 PM Wayne Ludlum <wayne@mossa.cc> wrote:
>> Hi Daniel,

I appreciate your patience, you guys have been more than patient and great. We are working on this today and will have a solid plan by tomorrow to share and start implementing.


Best - Wayne


**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

[Quoted text hidden]

---

**Wayne Ludlum** <wayne@mossa.cc>                                                    Mon, Mar 13, 2023 at 2:48 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>

Daniel,


We would like to propose the following payment schedule for the outstanding invoices:

- 3/31 - $75,666.67 (Nov. invoice)
- 4/15 - $100,606.25 (Dec. invoice)
- 5/15 - $110,937.50 (Jan. invoice)
- 5/31 – 97,537.50.00 (Feb. invoice)


This would be in addition to on-time payments starting in April for the ongoing work.


Appreciate your patience as we get caught up!


Best – Wayne


**Wayne** Ludlum/CPO

310.704.6142

MOSSA

http://www.mossa.cc

[Quoted text hidden]
[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                                   Mon, Mar 13, 2023 at 3:35 PM
To: Wayne Ludlum <wayne@mossa.cc>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>

Thanks Wayne. Have you guys secured the funding to make these payments plus the on-going work?



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com




[Quoted text hidden]

---

**Wayne Ludlum** <wayne@mossa.cc>                                         Mon, Mar 13, 2023 at 3:53 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting
<accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>

Yes and they are coming in trounces.  That is why I proposed to space out the payments.

[Quoted text hidden]

---

**Wayne Ludlum** <wayne@mossa.cc>                                         Mon, Mar 13, 2023 at 3:55 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting
<accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>

Sorry, I meant in tranches…

[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                        Mon, Mar 13, 2023 at 3:58 PM
To: Wayne Ludlum <wayne@mossa.cc>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting
<accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>

Got it, thanks Wayne. If something changes please let us know as we need this cash flow to fund on-going development. Anything you can do to accelerate payment
would be greatly appreciated.

 **Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com

 

[Quoted text hidden]

---

  **image001.png**
10K

---

**Wayne Ludlum** <wayne@mossa.cc>                                         Mon, Mar 13, 2023 at 4:01 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting
<accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>

Thank you, Daniel…

[Quoted text hidden]

---

**Wayne Ludlum** <wayne@mossa.cc>                                         Tue, Apr 4, 2023 at 4:12 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting
<accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>

Daniel,


Please see attached ACH.


-Wayne

[Quoted text hidden]

---

 **Payment Activity Dualboot - chase.pdf**
24K

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                    Fri, Apr 14, 2023 at 8:00 AM
To: Wayne Ludlum <wayne@mossa.cc>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>

Hi Wayne,

Checking in to confirm the December payment of $100,606.25 will still be paid tomorrow as agreed.

Thank you,
Daniel

 **Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com

 Tech Talent Crisis: Full-Blown or Over-Hyped?

 Building Trusting Relationships

[Quoted text hidden]

---

**Wayne Ludlum** <wayne@mossa.cc>                    Fri, Apr 14, 2023 at 10:07 AM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>

Hi Daniel,

Good Morning!  Yes!

Do you have time to chat on Monday on our current project status and concerns from our side.  Please kindly confirm some times from your side.

Have a great weekend!

- Wayne

Wayne Ludlum/Sent from my iPhone

> On Apr 14, 2023, at 5:00 AM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:
>
>
> Hi Wayne,
>
> Checking in to confirm the December payment of $100,606.25 will still be paid tomorrow as agreed.
>
> Thank you,
> Daniel

 **Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com

 Tech Talent Crisis: Full-Blown or Over-Hyped?

 Building Trusting Relationships

> On Tue, Apr 4, 2023 at 4:12 PM Wayne Ludlum <wayne@mossa.cc> wrote:
>> Daniel,

Please see attached ACH.

-Wayne

**From:** Wayne Ludlum <wayne@mossa.cc>
**Date:** Monday, March 13, 2023 at 1:02 PM
**To:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Thank you, Daniel…

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

**http://www.mossa.cc**

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

**http://www.mossa.cc**

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>
[Quoted text hidden]
[Quoted text hidden]

 **image001.png**
10K

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                    Fri, Apr 14, 2023 at 10:30 AM
To: Wayne Ludlum <wayne@mossa.cc>
Cc: Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting
<accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>, Allen Williams
<allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Wayne,

Yes I can connect today or Monday. Here is a link to my calendar please feel free to book a time that works for you.

I am aware of some design constraints on this project that came up on a recent call. There's been an internal miscommunication between your Dualboot development team and my resource allocation team that was caused by me. I had directed the allocation team not to pull design resources off paying projects to put them on this project until we have made significant progress on the 4 open invoices and over $400,000 in open balances. That communication was never delivered to you or your development team, which was my mistake.

Regarding making the next payment. There are some economic realities on our side regarding the open balances that we need your help with. Unfortunately, if you are not able to stick to the payment plan outlined in your previous email we will need to shut down this project. I don't like playing this card, but we use the prior month's payments to fund on-going development efforts, which in this case we are not able to do.

Feel free to give me a call to discuss this -- otherwise, I'll plan on connecting with you on Monday.

Thank you,
Daniel



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com




[Quoted text hidden]

---

**Anna Perelman** <anna@mossa.cc>                    Fri, Apr 14, 2023 at 12:27 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>, Wayne Ludlum <wayne@mossa.cc>
Cc: Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>

Hi Daniel-

Wayne's is out of pocket the rest of the day. Both topics warranted a conversation some time ago, as I know frustration and stress levels have continued to grow as we near launch.

We will schedule a time for Monday to discuss.

Thank you,

Anna

[Quoted text hidden]
[Quoted text hidden]

    [Quoted text hidden]
    [Quoted text hidden]

        [Quoted text hidden]
        [Quoted text hidden]

            [Quoted text hidden]
            [Quoted text hidden]

                [Quoted text hidden]

                **Wayne** Ludlum/CPO

                310.704.6142

                Error! Filename not specified.
                http://www.mossa.cc

                [Quoted text hidden]
                [Quoted text hidden]

**Anna Perelman** <anna@mossa.cc>                                                    Fri, Apr 14, 2023 at 12:28 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>, Wayne Ludlum <wayne@mossa.cc>
Cc: Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>

There's no availability on your calendar until Weds!  If you'd like to send us a few times that might work for you on Monday, we will make it happen on our end.

[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                                   Fri, Apr 14, 2023 at 12:30 PM
To: Anna Perelman <anna@mossa.cc>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Does 10am or 4PM ET on Monday work?



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com



Tech Talent Crisis: Full-Blown or Over-Hyped?



Building Trusting Relationships

[Quoted text hidden]

---

**Anna Perelman** <anna@mossa.cc>                                                    Fri, Apr 14, 2023 at 12:42 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

4pm ET would work well!

Sent from my iPhone
Anna Perelman
310-722-0597

> On Apr 14, 2023, at 9:30 AM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:

[Quoted text hidden]

---

**Wayne Ludlum** <wayne@mossa.cc>                                                    Mon, Apr 17, 2023 at 4:30 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>

Daniel,

Thank you for your time today.  Please also feel free to call me directly if needed for anything.

-Wayne (310) 704-6142

---

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Friday, April 14, 2023 at 7:30 AM
**To:** Wayne Ludlum <wayne@mossa.cc>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Hi Wayne,

Yes I can connect today or Monday. Here is a link to my calendar please feel free to book a time that works for you.

I am aware of some design constraints on this project that came up on a recent call. There's been an internal miscommunication between your Dualboot development team and my resource allocation team that was caused by me. I had directed the allocation team not to pull design resources off paying projects to put them on this project until we have made significant progress on the 4 open invoices and over $400,000 in open balances. That communication was never delivered to you or your development team, which was my mistake.

Regarding making the next payment. There are some economic realities on our side regarding the open balances that we need your help with. Unfortunately, if you are not able to stick to the payment plan outlined in your previous email we will need to shut down this project. I don't like playing this card, but we use the prior month's payments to fund on-going development efforts, which in this case we are not able to do.

Feel free to give me a call to discuss this -- otherwise, I'll plan on connecting with you on Monday.

Thank you,

Daniel



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

On Fri, Apr 14, 2023 at 10:07 AM Wayne Ludlum <wayne@mossa.cc> wrote:

Hi Daniel,

Good Morning!  Yes!

Do you have time to chat on Monday on our current project status and concerns from our side.  Please kindly confirm some times from your side.

Have a great weekend!

- Wayne

Wayne Ludlum/Sent from my iPhone

On Apr 14, 2023, at 5:00 AM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:

Hi Wayne,

Checking in to confirm the December payment of $100,606.25 will still be paid tomorrow as agreed.

Thank you,

Daniel



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

[Image removed by sender. The Carolina's Tech Problem] [Image removed by sender. MVP vs MVB]

On Tue, Apr 4, 2023 at 4:12 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Daniel,

Please see attached ACH.

-Wayne

**From:** Wayne Ludlum <wayne@mossa.cc>
**Date:** Monday, March 13, 2023 at 1:02 PM
**To:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Thank you, Daniel…

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

**http://www.mossa.cc**

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Monday, March 13, 2023 at 12:58 PM
**To:** Wayne Ludlum <wayne@mossa.cc>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Got it, thanks Wayne. If something changes please let us know as we need this cash flow to fund on-going development. Anything you can do to accelerate payment would be greatly appreciated.



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

[Image removed by sender. The Carolina's Tech Problem] [Image removed by sender. MVP vs MVB]

https://mail.google.com/mail/u/0/?ik=b61ff131a7&view=pt&search=all&permthid=thread-f:1759813457664146594&simpl=msg-f:1759813457664146…     10/26

On Mon, Mar 13, 2023 at 3:55 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Sorry, I meant in tranches…

**Wayne** Ludlum/CPO

310.704.6142

Error! Filename not specified.
http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

---

**From:** Wayne Ludlum <wayne@mossa.cc>
**Date:** Monday, March 13, 2023 at 12:53 PM
**To:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Yes and they are coming in trounces.  That is why I proposed to space out the payments.

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

---

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Monday, March 13, 2023 at 12:35 PM
**To:** Wayne Ludlum <wayne@mossa.cc>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Thanks Wayne. Have you guys secured the funding to make these payments plus the on-going work?



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

Image removed by sender. The Carolina's Tech Problem    Image removed by sender. MVP vs MVB

[Quoted text hidden]

  [Quoted text hidden]

    [Quoted text hidden]

Hi Wayne,

[Quoted text hidden]



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

[Image removed by sender. The Carolina's Tech Problem]   [Image removed by sender. MVP vs MVB]

On Thu, Mar 9, 2023 at 2:43 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Hi Daniel,

I appreciate your patience, you guys have been more than patient and great. We are working on this today and will have a solid plan by tomorrow to share and start implementing.

Best - Wayne

**Wayne** Ludlum/CPO

310.704.6142

**<image001.png>**

http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Daniel Delacruz <daniel.delacruz@dualbootpartners.com>
**Date:** Thursday, March 9, 2023 at 10:22 AM
**To:** Kate Henson <kate.henson@dualbootpartners.com>
**Cc:** Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Wayne Ludlum <wayne@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Hi Guys — can you please provide an update on the open balance and payment timeline. We are floating a tremendous amount of work.

Thank you,

Daniel

On Mar 8, 2023, at 10:21 AM, Kate Henson <kate.henson@dualbootpartners.com> wrote:

Hi All,

Please see the attached invoice for work performed in February and let us know if you have any questions.

Thank you,

Kate

Image removed by sender.

**Kate T. Henson**                              [Image removed by sender.]

Image removed by sender.

Operations and Accounting
Manager
kate.henson@dualboot.
com

 Image removed by sender.

dualbootpartners.com

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                              Mon, Apr 17, 2023 at 5:00 PM
To: Anna Perelman <anna@mossa.cc>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill
<kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Everyone,

Thank you for the call today -- I'm glad we were able to do that. Here's a quick summary of what we discussed:

1. Mossa has the funding and will continue making payments (payment was made today) according to the schedule/amount Wayne presented in his email on 3/13/23.
   This includes making on-time payments for invoices for on-going work
2. Dualboot to get unblocked on design capacity.
3. Sean to review builds from QA perspective prior to client presentation. We expect 100+ bugs in UAT, however Dualboot team and Sean should serve as first line of
   defense. We also expect to get rejected from Apple store and Google Play the first several attempts
4. UI/UX audit -- team over time will audit the UI/UX of the mobile app to make sure it presents a "white glove" experience for the user. This shall be secondary to
   getting the app working end-to-end which is priority #1.
5. Billing -- parties are comfortable with the ongoing team size (~1,300 per month) for now. We will work together on potentially downsizing the in the future.

Please let me know if I've missed the mark on anything.

Thank you,
Daniel



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com

 Tech Talent Crisis: Full-Blown or Over-Hyped?
 Building Trusting Relationships

[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                              Mon, Apr 17, 2023 at 5:02 PM
To: Wayne Ludlum <wayne@mossa.cc>

Thank you Wayne, likewise.



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com

 Tech Talent Crisis: Full-Blown or Over-Hyped?
 Building Trusting Relationships

[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                              Wed, Apr 19, 2023 at 12:43 PM
To: Anna Perelman <anna@mossa.cc>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill
<kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Mossa Team,

Can you please confirm we are in alignment regarding my meeting summary posted in my last email and copy/pasted below?

Thank you,
Daniel

~~~~~

Thank you for the call today -- I'm glad we were able to do that. Here's a quick summary of what we discussed:

1. Mossa has the funding and will continue making payments (payment was made today) according to the schedule/amount Wayne presented in his email on 3/13/23. This includes making on-time payments for invoices for on-going work
2. Dualboot to get unblocked on design capacity.
3. Sean to review builds from QA perspective prior to client presentation. We expect 100+ bugs in UAT, however Dualboot team and Sean should serve as first line of defense. We also expect to get rejected from Apple store and Google Play the first several attempts
4. UI/UX audit -- team over time will audit the UI/UX of the mobile app to make sure it presents a "white glove" experience for the user. This shall be secondary to getting the app working end-to-end which is priority #1.
5. Billing -- parties are comfortable with the ongoing team size (~1,300 per month) for now. We will work together on potentially downsizing the in the future.

Please let me know if I've missed the mark on anything.



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com




[Quoted text hidden]

---

**Jeff Browning** <j.browning@mossa.cc>        Wed, Apr 19, 2023 at 4:20 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>

I will speak to items 2-5
2 - Yes. We need this to be unblocked immediately and remain unblocked to avoid jeopardizing the project timelines
3 - Yes. We agree. I expect many more than that bugs that 100 and expect app rejections. It is par for the course. The larger point is that Sean is acting as a stop gap performing functional user testing. The overall QA plan is very light and lacks coordinated test case management and automated test tooling. I have concerns over unit test coverage as well.
4 - We understand regarding the small details and the white glove experience. Our request was a quick review by Senior UX resources to ensure we have not missed some larger issues (user flows, look and feel, etc) that cannot be quickly addressed at the end without significant rework and associated delays.
5 - We have just started discussing this with the DB team and are not yet comfortable with what we will need moving forward beyond May/June.

Jeff Browning/CTO
770.862.2518
signature_1583201219
http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Jeff Browning and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Sent:** Monday, April 17, 2023 5:00 PM
**To:** Anna Perelman <anna@mossa.cc>
**Cc:** Wayne Ludlum <wayne@mossa.cc>; Sean Heath <sean.heath@dualbootpartners.com>; Jeff Browning <j.browning@mossa.cc>; Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>; Allen Williams <allen.williams@dualbootpartners.com>; Allison Garber <allison.garber@dualbootpartners.com>
[Quoted text hidden]

[Quoted text hidden]

---

**Anna Perelman** <anna@mossa.cc>        Wed, Apr 19, 2023 at 5:01 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Daniel-

Thank you for summarizing! Yes, to all of 1-4. #5 I need to discuss with Jeff, but we're aligned on the general direction. He will follow-up with the team if anything needs to be adjusted.

Best,

Anna

---

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Wednesday, April 19, 2023 at 9:43 AM
**To:** Anna Perelman <anna@mossa.cc>

[Quoted text hidden]

[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualbootpartners.com>                    Thu, Apr 20, 2023 at 11:12 AM
To: Anna Perelman <anna@mossa.cc>
Cc: Daniel Delacruz <daniel.delacruz@dualboot.com>, Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Thank you Anna.

Would you guys mind sharing the ach confirmation from the Monday transfer? I have not seen anything come through on our side.

Than you,
Daniel

On Apr 19, 2023, at 5:01 PM, Anna Perelman <anna@mossa.cc> wrote:

[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                    Tue, Apr 25, 2023 at 11:24 AM
To: Anna Perelman <anna@mossa.cc>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Anna,

First off, thank you for the ongoing updates you've sent me over text messages regarding the hanging payment. I hope we can get that resolved today.

A friendly reminder that the March invoice is now due. Are you able to start another ACH for this invoice?

Thank you,
Daniel



**Daniel DelaCruz**
Principal

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com





[Quoted text hidden]

---

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                    Fri, Dec 15, 2023 at 2:03 PM
To: Nita Northington <nita.northington@dualbootpartners.com>



**Daniel DelaCruz**
Partner

mobile: 904.728.0904

www.dualboot.com
daniel.delacruz@dualbootpartners.com

 

[Quoted text hidden]

---

**Nita Northington** <nita.northington@dualbootpartners.com>                    Fri, Dec 15, 2023 at 2:39 PM
To: Alli Davidson <allidavidson@mvalaw.com>
Cc: Scott Tyler <scotttyler@mvalaw.com>, Daniel DelaCruz <daniel.delacruz@dualboot.com>

Alli,
  I have attached a redlined version of the petition with a handful of edits. Also, the emails below include the requested March email chain re the First Payment Plan.
Thanks,
Nita
[Quoted text hidden]
--



**Nita Northington**
In-House Counsel / Engagement Success
Advocate
nita.northington@dualbootpartners.com



dualbootpartners.com

The information transmitted by this email is intended only for the person or entity to which it is addressed. This email may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message, be aware that any use, review, retransmission, distribution, reproduction or any action taken in reliance upon this message is strictly prohibited. If you received this in error, please contact the sender and delete the material from all computers.

---

 **Mossa Complaint (Federal Court) (13422418.1) NN120523.docx**
86K

---

**Alli Davidson** <allidavidson@mvalaw.com>                    Tue, Dec 19, 2023 at 3:39 PM
To: Nita Northington <nita.northington@dualbootpartners.com>
Cc: Scott Tyler <scotttyler@mvalaw.com>, Daniel DelaCruz <daniel.delacruz@dualboot.com>

Nita,

Thank you again for providing your thoughts on the draft complaint, as well as the emails and text communications. Do you by chance have copies of the following documents:

- The March 13, 2023 letter noting the balance of $384,747.92 due on Mossa's account (paragraph 23 of the draft Complaint)
  - This may be the email correspondence. If so, please confirm.
- The July 10, 2023 written notice to Mossa of the $503,118.75 due (paragraph 40 of the draft Complaint)

Thanks,

Alli Davidson

---

**From:** Nita Northington <nita.northington@dualbootpartners.com>
**Sent:** Friday, December 15, 2023 2:40 PM
**To:** Alli Davidson <allidavidson@mvalaw.com>
**Cc:** Scott Tyler <scotttyler@mvalaw.com>; Daniel DelaCruz <daniel.delacruz@dualboot.com>
**Subject:** Fwd: MOSSA <> DBP Invoice - February 2023

**EXTERNAL EMAIL - USE CAUTION**

Alli,

  I have attached a redlined version of the petition with a handful of edits. Also, the emails below include the requested March email chain re the First Payment Plan.

Thanks,

Nita

---------- Forwarded message ----------
From: **Daniel Delacruz** <daniel.delacruz@dualboot.com>
Date: Fri, Dec 15, 2023 at 1:03 PM
Subject: Fwd: MOSSA <> DBP Invoice - February 2023
To: Nita Northington <nita.northington@dualbootpartners.com>



**Daniel DelaCruz**

Partner

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com




---------- Forwarded message ----------
From: **Daniel Delacruz** <daniel.delacruz@dualboot.com>
Date: Tue, Apr 25, 2023 at 11:24 AM
Subject: Re: MOSSA <> DBP Invoice - February 2023
To: Anna Perelman <anna@mossa.cc>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Anna,

First off, thank you for the ongoing updates you've sent me over text messages regarding the hanging payment. I hope we can get that resolved today.

A friendly reminder that the March invoice is now due. Are you able to start another ACH for this invoice?

Thank you,
Daniel



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com




On Thu, Apr 20, 2023 at 11:13 AM Daniel Delacruz <daniel.delacruz@dualbootpartners.com> wrote:

Thank you Anna.

Case 5:24-cv-00032-M-RN      Document 1      Filed 01/18/24      Page 52 of 95

Would you guys mind sharing the ach confirmation from the Monday transfer? I have not seen anything come through on our side.

Than you,

Daniel

> On Apr 19, 2023, at 5:01 PM, Anna Perelman <anna@mossa.cc> wrote:
>
> Hi Daniel-
>
> Thank you for summarizing!  Yes, to all of 1-4.  #5 I need to discuss with Jeff, but we're aligned on the general direction.  He will follow-up with the team if anything needs to be adjusted.
>
> Best,
>
> Anna

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Wednesday, April 19, 2023 at 9:43 AM
**To:** Anna Perelman <anna@mossa.cc>
**Cc:** Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Hi Mossa Team,

Can you please confirm we are in alignment regarding my meeting summary posted in my last email and copy/pasted below?

Thank you,

Daniel

~~~~~

Thank you for the call today -- I'm glad we were able to do that. Here's a quick summary of what we discussed:

1. Mossa has the funding and will continue making payments (payment was made today) according to the schedule/amount Wayne presented in his email on 3/13/23. This includes making on-time payments for invoices for on-going work
2. Dualboot to get unblocked on design capacity.
3. Sean to review builds from QA perspective prior to client presentation. We expect 100+ bugs in UAT, however Dualboot team and Sean should serve as first line of defense. We also expect to get rejected from Apple store and Google Play the first several attempts
4. UI/UX audit -- team over time will audit the UI/UX of the mobile app to make sure it presents a "white glove" experience for the user. This shall be secondary to getting the app working end-to-end which is priority #1.
5. Billing -- parties are comfortable with the ongoing team size (~1,300 per month) for now. We will work together on potentially downsizing the in the future.

Please let me know if I've missed the mark on anything.



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

 

On Mon, Apr 17, 2023 at 5:00 PM Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:

Hi Everyone,

Thank you for the call today -- I'm glad we were able to do that. Here's a quick summary of what we discussed:

1. Mossa has the funding and will continue making payments (payment was made today) according to the schedule/amount Wayne presented in his email on 3/13/23. This includes making on-time payments for invoices for on-going work
2. Dualboot to get unblocked on design capacity.
3. Sean to review builds from QA perspective prior to client presentation. We expect 100+ bugs in UAT, however Dualboot team and Sean should serve as first line of defense. We also expect to get rejected from Apple store and Google Play the first several attempts
4. UI/UX audit -- team over time will audit the UI/UX of the mobile app to make sure it presents a "white glove" experience for the user. This shall be secondary to getting the app working end-to-end which is priority #1.
5. Billing -- parties are comfortable with the ongoing team size (~1,300 per month) for now. We will work together on potentially downsizing the in the future.

Please let me know if I've missed the mark on anything.

Thank you,
Daniel



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

 

On Fri, Apr 14, 2023 at 12:42 PM Anna Perelman <anna@mossa.cc> wrote:

4pm ET would work well!

Sent from my iPhone

Anna Perelman

310-722-0597

> On Apr 14, 2023, at 9:30 AM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:
>
> Does 10am or 4PM ET on Monday work?



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

 

On Fri, Apr 14, 2023 at 12:28 PM Anna Perelman <anna@mossa.cc> wrote:

There's no availability on your calendar until Weds! If you'd like to send us a few times that might work for you on Monday, we will make it happen on our end.

---

**From:** Anna Perelman <anna@mossa.cc>
**Date:** Friday, April 14, 2023 at 9:27 AM
**To:** Daniel Delacruz <daniel.delacruz@dualboot.com>, Wayne Ludlum <wayne@mossa.cc>
**Cc:** Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Hi Daniel-

Wayne's is out of pocket the rest of the day. Both topics warranted a conversation some time ago, as I know frustration and stress levels have continued to grow as we near launch.

We will schedule a time for Monday to discuss.

Thank you,

Anna

---

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Friday, April 14, 2023 at 7:30 AM
**To:** Wayne Ludlum <wayne@mossa.cc>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>, Allen Williams <allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Hi Wayne,

Yes I can connect today or Monday. Here is a link to my calendar please feel free to book a time that works for you.

I am aware of some design constraints on this project that came up on a recent call. There's been an internal miscommunication between your Dualboot development team and my resource allocation team that was caused by me. I had directed the allocation team not to pull design resources off paying projects to put them on this project until we have made significant progress on the 4 open invoices and over $400,000 in open balances. That communication was never delivered to you or your development team, which was my mistake.

Regarding making the next payment. There are some economic realities on our side regarding the open balances that we need your help with. Unfortunately, if you are not able to stick to the payment plan outlined in your previous email we will need to shut down this project. I don't like playing this card, but we use the prior month's payments to fund on-going development efforts, which in this case we are not able to do.

Feel free to give me a call to discuss this -- otherwise, I'll plan on connecting with you on Monday.

Thank you,

Daniel



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com




On Fri, Apr 14, 2023 at 10:07 AM Wayne Ludlum <wayne@mossa.cc> wrote:

Hi Daniel,

Good Morning!  Yes!

Do you have time to chat on Monday on our current project status and concerns from our side.  Please kindly confirm some times from your side.

Have a great weekend!

- Wayne

Wayne Ludlum/Sent from my iPhone

On Apr 14, 2023, at 5:00 AM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:

Hi Wayne,

Checking in to confirm the December payment of $100,606.25 will still be paid tomorrow as agreed.

Thank you,

Daniel



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

 

On Tue, Apr 4, 2023 at 4:12 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Daniel,

Please see attached ACH.

-Wayne

**From:** Wayne Ludlum <wayne@mossa.cc>
**Date:** Monday, March 13, 2023 at 1:02 PM
**To:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Thank you, Daniel…

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

**http://www.mossa.cc**

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Monday, March 13, 2023 at 12:58 PM
**To:** Wayne Ludlum <wayne@mossa.cc>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Sean Heath <sean.heath@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Got it, thanks Wayne. If something changes please let us know as we need this cash flow to fund on-going development. Anything you can do to accelerate payment would be greatly appreciated.



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

 

On Mon, Mar 13, 2023 at 3:55 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Sorry, I meant in tranches…

**Wayne** Ludlum/CPO

310.704.6142

Error! Filename not specified.
http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

---

**From:** Wayne Ludlum <wayne@mossa.cc>
**Date:** Monday, March 13, 2023 at 12:53 PM
**To:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Yes and they are coming in trounces.  That is why I proposed to space out the payments.

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

---

**From:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Date:** Monday, March 13, 2023 at 12:35 PM
**To:** Wayne Ludlum <wayne@mossa.cc>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Thanks Wayne. Have you guys secured the funding to make these payments plus the on-going work?



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com




On Mon, Mar 13, 2023 at 2:48 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Daniel,

We would like to propose the following payment schedule for the outstanding invoices:

- 3/31 - $75,666.67 (Nov. invoice)
- 4/15 - $100,606.25 (Dec. invoice)
- 5/15 - $110,937.50 (Jan. invoice)
- 5/31 – 97,537.50.00 (Feb. invoice)

This would be in addition to on-time payments starting in April for the ongoing work.

Appreciate your patience as we get caught up!

Best – Wayne

**Wayne** Ludlum/CPO

310.704.6142

<image001.png>

**http://www.mossa.cc**

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

---

**From:** Wayne Ludlum <wayne@mossa.cc>
**Date:** Monday, March 13, 2023 at 7:37 AM
**To:** Daniel Delacruz <daniel.delacruz@dualboot.com>
**Cc:** Kate Henson <kate.henson@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Hi Daniel,

I will have a plan to you this morning, I was waiting for a confirmation on Friday to respond back.

-Wayne

On Mar 13, 2023, at 7:15 AM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:

Hi Wayne,

Circling back on this thread. Can you please share the plan here?



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

 

On Thu, Mar 9, 2023 at 2:43 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Hi Daniel,

I appreciate your patience, you guys have been more than patient and great.  We are working on this today and will have a solid plan by tomorrow to share and start implementing.

Best - Wayne

**Wayne** Ludlum/CPO

310.704.6142

**<image001.png>**

http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Daniel Delacruz <daniel.delacruz@dualbootpartners.com>
**Date:** Thursday, March 9, 2023 at 10:22 AM
**To:** Kate Henson <kate.henson@dualbootpartners.com>
**Cc:** Jeff Browning <j.browning@mossa.cc>, Anna Perelman <anna@mossa.cc>, Wayne Ludlum <wayne@mossa.cc>, Accounting <accounting@dualbootpartners.com>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>
**Subject:** Re: MOSSA <> DBP Invoice - February 2023

Hi Guys — can you please provide an update on the open balance and payment timeline. We are floating a tremendous amount of work.

Thank you,

Daniel

On Mar 8, 2023, at 10:21 AM, Kate Henson <kate.henson@dualbootpartners.com> wrote:

Hi All,

Please see the attached invoice for work performed in February and let us know if you have any questions.

Thank you,

Kate



**Kate T. Henson**
Operations and Accounting Manager
kate.henson@dualbootpartners.com



dualbootpartners.com

--

**Nita Northington**
In-House Counsel / Engagement Success Advocate
nita.northington@dualbootpartners.com

dualbootpartners.com

The information transmitted by this email is intended only for the person or entity to which it is addressed. This email may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message, be aware that any use, review, retransmission, distribution, reproduction or any action taken in reliance upon this message is strictly prohibited. If you received this in error, please contact the sender and delete the material from all computers.

CONFIDENTIAL & PRIVILEGED Unless otherwise indicated or obvious from the nature of the following communication, the information contained herein is attorney-client privileged and confidential information/work product. The communication is intended for the use of the individual or entity named above. If the reader of this transmission is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies, electronic, paper or otherwise, which you may have of this communication. Thank You.

Moore & Van Allen

# EXHIBIT C



**Wayne Ludlum** 3:45 PM

Hi Team: Thank you for your continued work to date on the Northway app. We are on a temporary pause while we work through some issues with our bank. We look forward to jumping back in as soon as possible and appreciate everyones hard work... -Wayne

# EXHIBIT D



**6:43**

12

**WL**

Wayne >

Mon, May 1 at 12:12 PM

Hi Wayne — how is Anna feeling today?

Did Chase provide an expected arrival date, we have not seen anything come through on our end. Thank you.

Mon, May 1 at 3:51 PM

Hey Wayne — just tried calling you. Sorry to nag here but we're at a pretty time sensitive spot regarding payment. It's putting a lot of pressure on the project.

Hi Daniel-
Sorry I am just getting back to you. Have been with Doctor appts today with Anna. We will be sending payment tomorrow - I will confirm and update you in the morning.

Anna is doing better, we are just trying to make sure we have everything tested with the doctors

 

Wed, May 3 at 12:32 PM

 **Transaction details 050323 - chase.com.pdf** 
Zero KB of 136 KB

FYI

Wed, May 3 at 2:40 PM



Hi Wayne — would you be able to email that pdf. My phone can't open it for some reason.

Thanks. Any update on payment timeline? We are in a position where we will need to start reassigning the development team.

Chase is stating funds released latest by 5/5, Friday. Please give us a few days.

Fri, May 5 at 5:20 PM

Hey Wayne — is this wire going to

# EXHIBIT E

**CHASE ◆** *for* **BUSINESS**®

Printed from Chase for Business

---

## PLAT BUS CHECKING (...7616)

**$500,000.00**
Incoming wire transfer

Apr 21, 2023
Deposit date

PLAT BUS CHECKING
(...7616)
Account name

0630150094FF
Transaction ID

0404I1B7031R012530
SWIFT/FED/CHIP ID

---

### Beneficiary information

| | |
|---|---|
| Account | ....7616 |
| Name | MOSSA HOLDINGS LLC |
| Address | 108 WESTERLY PL CIBOLO TX 78108-3207 US |

### Bank information

| | |
|---|---|
| Related references | 0000667094178336 |
| Bank reference number | 2023040400125847 |

### Additional information

Notice of delayed Deposit Availability

| | |
|---|---|
| Amount Delayed | $500,000.00 |
| Date when available | 05/05/2023 |

Further review may result in additional deposit availability delay.

For transaction details, please refer to the periodic statement for the official record of this transaction.

# EXHIBIT F

Mon, May 8 at 11:26 AM

Hi Wayne. Still nothing on our end. Any update?

Mon, May 8 at 2:45 PM

Hi Daniel-
I just out of a meeting with our bank! I'm at my wits end. Unfortunately, it's a big mess because First Republic was involved. And now they are telling me that it will take way more time to clear these funds. My sincerest apologies, we have another investment coming in and I'm working on expediting that on my end. I know you have to pull resources off as needed, however, we're pushing hard to make it very short-term.

Hi Wayne. Thanks for the update. Are you able to have your banker write a letter? Anna had previously offered this.

# EXHIBIT G



Tue, May 23 at 11:38 AM

Hi Wayne — are you still able to send payment tomorrow?

Yes, that is the plan

Thu, May 25 at 5:07 PM

Hi Wayne — what's the word here? What's blocking payment?

Fri, May 26 at 1:49 PM

?

Mon, May 29 at 3:25 PM

Happy Memorial Day! I'll update you again tomorrow. Wire was pending for us on Friday.

Tue, May 30 at 12:50 PM

Hi Wayne. Thanks for the message. Any update for today?

Thu, Jun 1 at 3:32 PM

??

# EXHIBIT H

Mon, Jun 19 at 4:11 PM

Sorry for the delayed response,
we were buried at the US OPEN
last week with Andy. We had a 10
day hold on funds from our
deposited check which was
suppose to be released on
6/15. Since the issuing bank
would not confirm funds had
cleared they extended the hold to
14 days – which makes funds
available on 6/22. We will then be
able to pay DB. There will be no
more delays and we can then get
back up and running. Let's plan a
call to reengage on 6/23 with our
respective teams. Thank you
again for you patience... response
from our meetings at the US
OPEN were amazing..

Edited

Wed, Jul 5 at 11:46 AM

Hi Wayne — what's going on here?
Does it make sense to get on a
call. I am getting pressure to start
a collections process and at the
end of the rope here.

# EXHIBIT I



# EXHIBIT J

| | |
|---|---|
| **From:** | Nita Northington <nita.northington@dualbootpartners.com> |
| **Sent:** | Tuesday, July 18, 2023 1:49 PM |
| **To:** | wayne@mossa.cc; anna@mossa.cc; jbrowning@mossa.cc |
| **Cc:** | Daniel DelaCruz; Sean Heath; Ben Gilman; Todd Buelow |
| **Subject:** | Mossa Outstanding Invoices |
| **Attachments:** | Mossa 360 Notice of Outstanding Invoices.docx |

Wayne and Anna,

Please see the attached notice.

Regards,

Nita

--

 

**Nita Northington**
In-House Counsel / Engagement Success Advocate
nita.northington@dualbootpartners.com

dualbootpartners.com

The information transmitted by this email is intended only for the person or entity to which it is addressed. This email may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message, be aware that any use, review, retransmission, distribution, reproduction or any action taken in reliance upon this message is strictly prohibited. If you received this in error, please contact the sender and delete the material from all computers.



DUALBOOT PARTNERS PAST DUE INVOICE NOTICE
PAYMENT DUE UPON RECEIPT

Mr. Wayne Ludlum COO
MOSSA
9203 Pelican Avenue
Fountain Valley, CA 92708

Ms. Anna Ludham
MOSSA
9203 Pelican Avenue
Fountain Valley, CA 92708

Wayne and Anna:

I represent Dualboot Partners as In-House Counsel and am contacting you in this capacity.  As of July 13, 2023, Mossa's outstanding invoices due to Dualboot total $571,515.79.  Please see the table below for an itemized amount of each invoice.  These amounts are currently past due and, under the terms of the Master Services Agreement and Statement of Work dated August 30, 2022, Mossa is currently accruing an additional 1.5% interest on these past due invoices.  Additionally, Section 9 of the MSA provides that ownership of the Deliverables prepared by Dualboot under the MSA are conditioned upon full payment by Mossa.

**MOSSA Open Invoices and Accrued Interest**



| | A | B | | C | | | | | | G = B + F |
|---|---|---|---|---|---|---|---|---|---|---|
| Invoice Date | Invoice Total | Open Amount | Date Sent | Date Payment Received | Due Date | Past Due Days | Interest Multiplier | Interest Amount | Amount Due | |
| Sep-22 | $10,222.58 | $0.00 | 10/6/2022 | 10/27/2022 | 10/21/2022 | 6 | 1.00597321 | $61.06 | $61.06 | |
| Oct-22 | 28,255.33 | 0.00 | 11/7/2022 | 1/5/2023 | 11/22/2022 | 43 | 1.04360461 | 1,232.06 | 1,232.06 | |
| Nov-22 | 75,666.67 | 0.00 | 12/9/2022 | 4/5/2023 | 12/24/2022 | 101 | 1.10544724 | 7,978.84 | 7,978.84 | |
| Dec-22 | 100,606.25 | 100,606.25 | 1/6/2023 | | 1/21/2023 | 173 | 1.18733979 | 18,847.55 | 119,453.80 | |
| Jan-23 | 110,937.50 | 110,937.50 | 2/7/2023 | | 2/22/2023 | 142 | 1.15136193 | 16,791.71 | 127,729.21 | |
| Feb-23 | 97,537.50 | 97,537.50 | 3/8/2023 | | 3/23/2023 | 111 | 1.11647425 | 11,360.61 | 108,898.11 | |
| Mar-23 | 107,050.00 | 107,050.00 | 4/10/2023 | | 4/25/2023 | 79 | 1.08156964 | 8,732.03 | 115,782.03 | |
| Apr-23 | 81,437.50 | 81,437.50 | 5/4/2023 | | 5/19/2023 | 55 | 1.05610919 | 4,569.39 | 86,006.89 | |
| May-23 | 5,550.00 | 5,550.00 | 6/8/2023 | | 6/23/2023 | 21 | 1.02106281 | 116.90 | 5,666.90 | |
| | | | | | | | | **Total Outstanding** | **$ 571,515.79** | |

D = Date Paid - C    E = 1.015 ^ (D/15)    F = (A x E) - A

*No Payment Received

**Formulas**
Past Due Days = Date Paid (Today if Unpaid) - Invoice Due Date
Interest Multiplier = (100 x 1.5%) ^ (Past Due Days / 15)
Interest Amount = (Invoice Total x Interest Multiplier) - Invoice Total
Amount Due = Open Amount + Interest Amount

Our team has sent multiple reminders to pay your past due invoices and, in response, you have made what we believe to be fabricated claims regarding promises of payment and wire confirmations, as detailed in this letter. In early March of this year, Daniel DelaCruz contacted you regarding payment of Mossa's outstanding invoices. Following his communication, on March 13, you agreed to a payment plan for your overdue and outstanding invoices, to be paid in full at the end of May, as shown below.



In response to this commitment, Daniel requested confirmation that Mossa had sufficient funds to meet the obligations of the payment plan. Anna responded on April 19 confirming the existence of sufficient funds. Both emails are copied below.

**Daniel Delacruz** <daniel.delacruz@dualboot.com>                                        Mon, Apr 17, 2023 at 5:00 PM
To: Anna Perelman <anna@mossa.cc>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning
<j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams
<allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Everyone,

Thank you for the call today -- I'm glad we were able to do that. Here's a quick summary of what we discussed:

1. Mossa has the funding and will continue making payments (payment was made today) according to the schedule/amount Wayne presented in his email on 3/13/23. This includes making on-time payments for invoices for on-going work
2. Dualboot to get unblocked on design capacity.
3. Sean to review builds from QA perspective prior to client presentation. We expect 100+ bugs in UAT, however Dualboot team and Sean should serve as first line of defense. We also expect to get rejected from Apple store and Google Play the first several attempts
4. UI/UX audit -- team over time will audit the UI/UX of the mobile app to make sure it presents a "white glove" experience for the user. This shall be secondary to getting the app working end-to-end which is priority #1.
5. Billing -- parties are comfortable with the ongoing team size (~1,300 per month) for now. We will work together on potentially downsizing the in the future.

Please let me know if I've missed the mark on anything.

Thank you,
Daniel

---

**Anna Perelman** <anna@mossa.cc>                                                          Wed, Apr 19, 2023 at 5:01 PM
To: Daniel Delacruz <daniel.delacruz@dualboot.com>
Cc: Wayne Ludlum <wayne@mossa.cc>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning
<j.browning@mossa.cc>, Kelly Anne O'Neill <kellyanne.oneill@dualbootpartners.com>, Allen Williams
<allen.williams@dualbootpartners.com>, Allison Garber <allison.garber@dualbootpartners.com>

Hi Daniel-

Thank you for summarizing!  Yes, to all of 1-4.  #5 I need to discuss with Jeff, but we're aligned on the general direction.  He will follow-up with the team if anything needs to be adjusted.

Best,

Anna

Mossa then failed to make the initial payment on the payment plan.  At that time, you remitted to our team a number of documents that we believe may have been fabricated to substantiate Mossa's ability to pay.  In the text thread shown below, as early as May 1st, you promised that payment was forthcoming the following day, and that you could provide proof of funds.  Then, on May 2nd, you deflected blame to the bank and sent a wire confirmation of a $500,000 payment purportedly from the bank to support your claim.  That letter could not be accessed and despite giving the thumbs up that you would email the letter to Daniel DelaCruz, you did not. Instead, you stated that Chase would release the funds at the latest by May 5.  Dualboot relied upon Mossa's promised to pay in continuing to provide services in March, April and May.  Upon Mossa's failure to make the initial payment, Dualboot was forced to cease services in early May due to a material breach of the Master Services Agreement.



On May 5, with no payment, Daniel contacted you again, only to receive the following message from you, deflecting fault to the bank once again and promising a letter supporting your claim from the bank. Again, no such letter was received.



Your texts then became more specific beginning May 15, when you texted Daniel "We are planning on wiring monies within the next week. I will know more in the next few days and will confirm back. And,

on May 18th, "We should have $$ to you and ready to go by Wed 5/24". In response to Daniel's May 23rd request for confirmation of payment the following day, you responded "Yes, that is the plan." Again, Dualboot did not receive any payment on May 24th as promised. On May 25, Daniel again followed up, to which you responded, "Happy Memorial Day! I'll update you again tomorrow. Wire was pending for us on Friday."

Your promises of payment continued into June and continued to provide specifics regarding timing.



On Friday July 7, you stated on a phone call with Daniel DelaCruz that Mossa had received $600,000 in funds, and Daniel requested proof of this information. On the following day, you texted a screenshot of the bank account balance of Mossa Holdings LLC, showing a balance of $357,217.32 as evidence of ability to pay. A follow up call was held on Monday, July 10, and you followed up with the following email:

Daniel,

Thank you for the call this morning. Per our conversation we are confirming the following in regard to our total outstanding balance and support requested from Dualboot:

$150,000 – 07.10.23
$184,059 – 07.28.23
$184.059 – 08.10.23

This would then bring us current and allow us to restart and for you to allocate resources for the full team to move forward to finish building the Northway App. I will keep you updated if we can accelerate this plan as we have monies incoming.

As we discussed we would kindly request some hours from Rodrigo to work on integrating the Cereproc voice engine API and wake-word into the current App so that we could demo this within the next few weeks. You were going to confirm this with Sean. I also included the small hit list that we discussed this morning.

Best – Wayne

This text was followed by the following wire confirmation, sent by email to Daniel, Sean Heath and Allen Williams, but as of the date of this letter, no such wire has been received by Dualboot.



In light of the information included herein, Dualboot requests that Mossa as well as yourselves, take all steps to preserve potentially relevant electronically stored information (ESI) in accordance with the Federal Rules of Civil Procedure. We understand ESI includes, but is not limited to digital communications, word processing files, spreadsheets, databases, calendars, and presentations, whether maintained on any personal or business computer, network, telephones, smart phones, PDA, thumb drives, external hard drives, or other devices. However, ESI should be afforded the broadest possible meaning; a universal list is impossible to draft and may be outdated quickly.

Please take all necessary steps to preserve potentially relevant data in the following categories of ESI (by way of example and not as an inclusive list) electronically, magnetically optically, or otherwise stored as and on:

1. Digital communications (for example, e-mail and attachments, voice mail, text messagings, SIM cards, WhatsApp, etc.)
2. E-mail servers
3. Word processed documents
4. Spreadsheets and tables
5. Presentations

6.  Social networking sites
7.  Websites (internal and external)
8.  Online "Cloud" repositories
9.  Databases
10. Backup and archival files
11. Contact and customer relationship management data
12. Online banking, credit card, retail and other relevant account records
13. Accounting application data
14. Image and facsimile files
15. Sound recordings
16. Video and animation
17. Calendar, journaling, and diary application data,
18. Project management application data
19. Computer aided design and drawing files
20. Online access data
21. Network access and server logs
22. Internet of Things (IoT) devices and apps

If third-party vendors, agents or a parent or affiliated corporation is relied upon for internal or external web sites, disaster recovery, or off-site storage, please take steps necessary to prevent that data from being changed or deleted.

In the event we must pursue litigation in this matter, we may seek prompt discovery of all of the above items.  Please understand that this evidence must be preserved for the duration of any negotiations or possible litigation filed with regards to this matter.

Unless Dualboot receives payment in full upon receipt of this letter, we will be forced to commence legal action to enforce Mossa's obligation under our agreements.  As provided in Section 8(b) of the Master Services Agreement specified above, if Dualboot is required to employ legal process to recover any amount due, Mossa will be responsible for reasonable attorney's fees and the costs of such collection.  Please contact me or Daniel Delacruz to arrange payment.


Sincerely,

Nita Northington
In-House Counsel and Engagement Success Advocate
Dualboot Partners
nita.northington@dualbootpartners.com

# EXHIBIT K

**From:** Wayne Ludlum <[wayne@mossa.cc](mailto:wayne@mossa.cc)>
**Date:** July 14, 2023 at 4:00:32 PM EDT
**To:** Daniel Delacruz <[daniel.delacruz@dualboot.com](mailto:daniel.delacruz@dualboot.com)>
**Cc:** Jeff Browning <[j.browning@mossa.cc](mailto:j.browning@mossa.cc)>, Sean Heath <[sean.heath@dualbootpartners.com](mailto:sean.heath@dualbootpartners.com)>
**Subject: Re: Mossa/Northway Follow up**

Daniel,

Wire was not sent until 7/12 since the initiation was after cut off time on 7/11. The said you will see the monies on your side on Monday which will be three business days from 7/12.

Let's talk Monday morning to confirm receipt.

Have a good weekend.

- Wayne

Wayne Ludlum/Sent from my iPhone


On Jul 14, 2023, at 11:04 AM, Wayne Ludlum <[wayne@mossa.cc](mailto:wayne@mossa.cc)> wrote:

Daniel,

Payment has left our account. I am on hold with the Wire dept now.

Wayne Ludlum/Sent from my iPhone


On Jul 14, 2023, at 9:38 AM, Daniel Delacruz <[daniel.delacruz@dualboot.com](mailto:daniel.delacruz@dualboot.com)> wrote:


Jeff,

Thanks -- we get hundreds of payments like this a year and understand this process well. I agree it can take 3 days. We still do not have anything in our account. Normally it would be here this morning. Can you confirm the money actually left the bank account on your side? Last time we were told a payment was made only to find out later that that did not actually happen.



**Daniel DelaCruz**

Principal

mobile: 904.728.0904

[www.dualboot.com](http://www.dualboot.com)

[daniel.delacruz@dualbootpartners.com](mailto:daniel.delacruz@dualbootpartners.com)

 

On Fri, Jul 14, 2023 at 12:32 PM Jeff Browning <j.browning@mossa.cc> wrote:
Daniel

The wire was an ACH payment. From my experience, those usually take 2-3 days. I receive payments using the same method. The payment was sent on the 11th. So it should have already arrived or should arrive today.

Can you check to see if it has been received on your side?

Thank you

Jeff

**Jeff Browning/CTO**
770.862.2518

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Jeff Browning and MOSSA, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

On Jul 13, 2023, at 8:52 PM, Daniel Delacruz <daniel.delacruz@dualbootpartners.com> wrote:

Hi Wayne — any update here?

On Jul 12, 2023, at 6:07 PM, Wayne Ludlum <wayne@mossa.cc> wrote:

I will check

Wayne Ludlum/Sent from my iPhone

On Jul 12, 2023, at 1:03 PM, Daniel Delacruz <daniel.delacruz@dualbootpartners.com> wrote:

 Thanks for checking. Do you know when it's supposed to post on our side?


On Jul 12, 2023, at 1:13 PM, Wayne Ludlum <wayne@mossa.cc> wrote:

 It was an ACH

Wayne Ludlum/Sent from my iPhone


On Jul 12, 2023, at 8:14 AM, Wayne Ludlum <wayne@mossa.cc> wrote:

 Let me check, I think it was an ACH and was sent out in the afternoon yesterday.

Wayne Ludlum/Sent from my iPhone


On Jul 12, 2023, at 6:47 AM, Daniel Delacruz <daniel.delacruz@dualbootpartners.com> wrote:

 Hi Wayne — we did not see the money come through yesterday or this morning. This is very unusual. Was the expected arrival date yesterday?

Sent from my iPhone


On Jul 11, 2023, at 6:30 PM, Wayne Ludlum <wayne@mossa.cc> wrote:


Daniel,


Please see attached confirmation.


-Wayne


**Wayne** Ludlum/CPO

310.704.6142

**<image001.png>**

http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

**From:** Wayne Ludlum <wayne@mossa.cc>
**Date:** Tuesday, July 11, 2023 at 7:25 AM
**To:** Daniel Delacruz <daniel.delacruz@dualbootpartners.com>
**Cc:** Daniel Delacruz <daniel.delacruz@dualboot.com>, Sean Heath <sean.heath@dualbootpartners.com>, Jeff Browning <j.browning@mossa.cc>
**Subject:** Re: Mossa/Northway Follow up

Yes.  I will forward wire confirmation once sent.

Wayne Ludlum/Sent from my iPhone

On Jul 11, 2023, at 7:10 AM, Daniel Delacruz <daniel.delacruz@dualbootpartners.com> wrote:

 Hi Wayne — we never received a wire yesterday. Are you planning on sending today?

On Jul 10, 2023, at 6:09 PM, Daniel Delacruz <daniel.delacruz@dualboot.com> wrote:

Hi Wayne,

Thanks for the note. This payment plan works for us. We will work on getting Rodrigo a few hours of capacity for this project. If it starts looking like it's going to be more then a few hours of work we will let you know.

Can you let me know when the wire is sent to us?

Thank you,

Daniel

**Daniel DelaCruz**

Principal

mobile: 904.728.0904

www.dualboot.com

daniel.delacruz@dualbootpartners.com

On Mon, Jul 10, 2023 at 5:51 PM Wayne Ludlum <wayne@mossa.cc> wrote:

Daniel,

Thank you for the call this morning. Per our conversation we are confirming the following in regard to our total outstanding balance and support requested from Dualboot:

$150,000 – 07.10.23

$184,059 – 07.28.23

$184.059 – 08.10.23

This would then bring us current and allow us to restart and for you to allocate resources for the full team to move forward to finish building the Northway App. I will keep you updated if we can accelerate this plan as we have monies incoming.

As we discussed we would kindly request some hours from Rodrigo to work on integrating the Cereproc voice engine API and wake-word into the current App so that we could demo this within the next few weeks. You were going to confirm this with Sean. I also included the small hit list that we discussed this morning.


Best – Wayne


<image002.png>

<image003.png>


**Wayne** Ludlum/CPO

310.704.6142

**<image001.png>**


http://www.mossa.cc

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from Wayne Ludlum and MOSSA and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged communications and/or information. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

<Wire activity 07.11.23- chase.pdf>


--

 **Nita Northington**
In-House Counsel / Engagement Success Advocate
nita.northington@dualbootpartners.com



dualbootpartners.com


The information transmitted by this email is intended only for the person or entity to which it is addressed. This email may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message, be aware that any use, review, retransmission,

distribution, reproduction or any action taken in reliance upon this message is strictly prohibited. If you received this in error, please contact the sender and delete the material from all computers.

# EXHIBIT L

# CHASE ⬡ for BUSINESS®
## Printed from Chase for Business

| Wire date | Status | Wire to | Transaction number | Transfer amount | Amount |
|-----------|--------|---------|--------------------|-----------------|--------|
| July 11, 2023 | Completed | DualbootP | 7120911531 | $150,000.00 | $150,000.00 USD |

| | |
|---:|---|
| Wire to | Dualboot Partners LLC (...3078) |
| Wire from | PLAT BUS CHECKING (...7616) |
| Amount | $150,000.00 USD (U.S. Dollar) |
| Wire fee | See analysis statement |
| Total | $150,000.00 USD (U.S. Dollar) |
| Wire date | July 11, 2023 |
| Status | Completed |
| Status date | July 11, 2023 |
| Reference number | 0711Q1CVB22F018834 |
| Transaction number | 7120911531 |
| Message to recipient | Mossa App Dev |
| Message to recipient bank | None |
| Memo | Mossa App Dev |
| Submitted by | 07/11/2023 05:11:01 PM ET |
| Submitted by date and timestamp | Not Available |
| Last modified by | 07/11/2023 05:31:22 PM ET |
| Modified by date and timestamp | |